IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | § | |
|---|---|---|
| **AUTOFICIO, LLC and BRIAN WHITESIDE,** | § § § § | |
| Plaintiffs, | § § | |
| v. | § | Civil Action No.: 4:17-cv-00404-KPJ |
| **CIMBLE CORP., ALVIN ALLEN, and PAUL BARRETT,** | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Cimble Corp. ("Cimble"), Alvin Allen ("Allen"), and Paul Barrett's ("Barrett") (collectively, "Defendants") Motion to Dismiss (the "Motion") (Dkt. 77). In the Motion, Defendants argue that Plaintiffs' Second Amended Complaint (the "Complaint") (Dkt. 70) should be dismissed with prejudice pursuant to Rule 12, or in the alternative, converted to a motion for summary judgment. *See* Dkt. 77 at 1. The Court held a hearing on the Motion on November 20, 2018. *See* Dkt. 112. Upon review of the Motion, associated briefing, limited documents, and oral argument, the Court finds the Motion (Dkt. 77) is **DENIED**.

### I. BACKGROUND

Plaintiffs Brian Whiteside ("Whiteside") and Autoficio, LLC ("Autoficio") (collectively, "Plaintiffs") bring this suit against Defendants alleging claims for: (1) common law fraud; (2) statutory fraud; (3) negligent misrepresentation; and (4) breach of contract. *See* Dkt. 70 at 1.

## A. PROCEDURAL HISTORY

This case was originally filed by Autoficio and Kapexia, LLC ("Kapexia") against Defendants under diversity jurisdiction. Dkt. 1. Defendants filed a Motion to Dismiss. Dkt. 11. Autoficio and Kapexia then filed a First Amended Complaint. Dkt. 13. Defendants filed a second Motion to Dismiss. *See* Dkt. 23. On January 8, 2018, an order of referral was entered referring the matter to the under-signed Magistrate Judge. *See* Dkt. 51. On January 25, 2018, the parties were ordered to file supplemental briefing setting forth the basis, or lack thereof, for the Court's jurisdiction over this case. Dkt. 58. All parties filed briefing. *See* Dkts. 61, 63, 65, 66. Subsequently, Plaintiffs filed a Second Amended Complaint in which Kapexia was removed and Brian Whiteside was added as a plaintiff. *See* Dkt. 70. On May 11, 2018, Defendants filed the Motion seeking dismissal of the case. Dkt. 77.

## B. FACTUAL HISTORY

In 2014, Whiteside sought investment opportunities and learned that Cimble, an automobile technology company, was seeking investors. *See* Dkt. 70 at 1–2. Whiteside and Cimble entered into negotiations regarding investment opportunities. *Id.* at ¶ 10. Plaintiffs allege that during negotiations, Defendants made multiple material misrepresentations both in the "Cimble Presentation 4.5.pdf" (the "Cimble PowerPoint") and in email communications. *See id.* at ¶ 13.

Plaintiffs allege the following misrepresentations by Defendants during the negotiations, prior to formation of an investment contract:

- Defendants represented to Whiteside that Cimble's value was $8.25 million, "but at that time they had special knowledge that Cimble was essentially dead—a worthless entity." *See* Dkt. 70 at ¶ 16.

- "Defendants represented Cimble's value included 'Paid up LunarEYE Patent Royalties,' and touted the value of two LunarEye, Inc. patents: U.S. Patent No.

6,484,035 ("the '035 Patent") and U.S. Patent No. 6,710,738 ("the '738 Patent")." *See* Dkt. 70 at ¶ 17. However, Plaintiffs allege that Defendants failed to pay required maintenance fees on the '738 Patent, resulting in its expiration. *See* Dkt. 70 at ¶ 17.

- "Defendants knew that a petition for *inter partes* review ("IPR") had been filed at the United States Patent and Trademark Office ("PTO") challenging the '035 Patent, and Defendants learned that a second IPR was filed against the '035 Patent before they accepted Plaintiffs' investments in Cimble. . . ." *See* Dkt. 70 at ¶ 17.

Whiteside ultimately invested in Cimble through membership in a limited liability company, Kapexia, along with other investors. *See* Dkt. 70 at ¶¶ 20, 21. Kapexia and Cimble agreed to a Share Purchase and Option Agreement (the "SPA") on August 4, 2014. *See* Dkt. 70-1. The SPA was signed by Whiteside and Allen. *See* Dkt. 70 at ¶ 23. Allen signed his name and the date under the line marked "Company" and Whiteside signed his name below "Purchaser: Kapexia, LLC," and following his signature was the typed language,

> Brian Whiteside, Manager
> Address: 100- 116th Ave SE
> Bellevue, WA 98004.

Dkt. 70-1 at 8.

Plaintiffs also contend the SPA itself contains misrepresentations. The SPA states, "there is no claim, action, suit, proceeding, arbitration, complaint, charge, or investigation pending or to Cimble's knowledge, currently threatened . . . that would reasonably be expected to have, either individually or in the aggregate, a material adverse effect." *See* Dkt. 70 at ¶ 25 (internal punctuation omitted). Plaintiff contends that the pending IPRs "would reasonably be expected to have a material adverse effect[,]" and that Defendants were aware of the IPRs but failed to disclose them. *See id.*

A Memorandum of Understanding ("MOU") was reached simultaneously with the SPA, which included a Line of Credit Agreement ("LOC") and an agreement setting forth the "Party's Roles" ("PRA"). *See* Dkt. 70 at ¶ 27. Under the LOC, "agreement was reached to lend Cimble $125,000.00, payable in five consecutive monthly installments." *See* Dkt. 70 at ¶ 28. Plaintiffs allege that Defendants entered the contract with no intention to perform or return the loaned funds. *See id.* Plaintiffs claim Whiteside and Autoficio made payments of $125,000.00, with assurances from Defendants the funds would be used to create a marketable device by January of 2015. *See* Dkt. 70 at ¶¶ 29, 30.[1] The parties dispute whether Kapexia or Cimble breached the contract. *See* Dkt. 70 at ¶¶ 31–32; *see also* Dkt. 77 at 16.

Plaintiffs argue the Court should pierce Cimble's corporate veil, allowing claims against Allen and Barrett individually, because Cimble's corporate form was a sham used to perpetrate a fraud and was inadequately capitalized which resulted in an injustice. Dkt. 70 at ¶ 34.

## II. LEGAL STANDARD

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is

---

[1] It is alleged that the full $125,000.00, was advanced by Kapexia to Cimble under the LOC. *See* Dkt. 70 at ¶ 28. The initial $25,000.00 payment was made by Whiteside from "his own personal funds," and four subsequent payments of $25,000.00 were made by Autoficio, of which Whiteside is the sole member. *See* Dkt. 70 at ¶ 30.

unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id*. at 563 n.8.

When considering a motion to dismiss, the court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

### III. EVIDENCE PRESENTED

Defendants offer the following evidence in support of the Motion:

1. Dkt. 77-2 at 3–11: First Share Purchase Agreement executed by Joseph Perez;

2. Dkt. 77-3 at 3: August 21, 2015, email from Joseph Perez;

3. Dkt. 77-4 at 3–62: Cimble PowerPoint presentation;

4. Dkt. 77-5 at 3–62: email and attachments of Cimble financial information;

5. Dkt. 77-6 at 3–6: emails from June, 2014;

6. Dkt. 77-7 at 3–11: July 24, 2014, email and attachment;

7. Dkt. 77-8 at 3–70: Petition for *Inter Partes* Review (IPR2014-00712) dated April 30, 2014;

8. Dkt. 77-9 at 3–71: Petition for *Inter Partes* Review (IPR2014-01213) dated July 29, 2014;

9. Dkt. 77-10 at 3–19: Institution Decision *Inter Partes* Review (IPR2014-0712) dated October 17, 2014;

10. Dkt. 77-11 at 3–31: Institution Decision *Inter Partes* Review (IPR2014-012313) dated February 3, 2015;

11. Dkt. 77-12 at 3–22: Final Written Decision *Inter Partes* Review (IPR2014-00712) dated September 28, 2015;

12. Dkt. 77-13 at 3–33: Final Written Decision *Inter Partes* Review (IPR2014-01213) dated February 2, 2016;

13. Dkt. 77-14 at 3–4: Fed. Cir. R. 36 Judgment regarding (IPR2014-00712 and IPR2014-01213) dated July 24, 2017;

14. Dkt. 77-15 at 3–8: May 10, 2018, print-out of public article from website "Law360," (https://www.law360.com/articles/928654/print?section=california), analyzing 142 orders on contested motions to stay pending IPR from the Northern District of California, District of Delaware, and Eastern District of Texas;

15. Dkt. 77-16 at 3: Print-out page from the United States Patent and Trademark Office PAIR website portal, (https://fees/uspto.gov/MaintenanceFees/fees/details?applicationNumber=10287618&patentNumber-6710738);

16. Dkt. 77-17 at 3: Print-out page from the United States Patent and Trademark Office PAIR website portal, (https://fees.uspto.gov/MaintenanceFees/fees/details?applicationNumber=10287618&patentNumber=6710738);

17. Dkt. 77-19 at 3: February 5, 2015, emails between Trevor Zink, Brian Whiteside, and Joseph Perez;

18. Dkt. 77-20 at 3: February 5, 2015, emails between Trevor Zink, Brian Whiteside, and Joseph Perez;

19. Dkt. 77-21 at 3–6: November 23, 2015, emails between Brian Whiteside and Chuck Allen; and

20. Dkt. 77-23 at 3–5: August 6, 2015, emails between Brian Whiteside and Alvin C. Allen.

Plaintiff offers the following evidence in opposition to Defendants' Motion:

1. Dkt. 70-1 at 2–10: Share Purchase and Option Agreement between Cimble Corp. and Kapexia, LLC, dated August 7, 2014;

2. Dkt. 70-2 at 2: Memorandum of Understanding between Kapexia, LLC, and Cimble Corp., dated August 7, 2014;

3. Dkt. 70-2 at 4–6: Secured Line of Credit dated August 7, 2014;

4. Dkt. 70-2 at 7–10: Party Roles document.

## IV. ANALYSIS

### A. REQUEST TO CONVERT MOTION TO SUMMARY JUDGMENT MOTION

The first matter before the Court is Defendants' plea to convert the Motion into a motion for summary judgment. *See* Dkt. 77 at 1. Defendants contend conversion would facilitate the disposition of the lawsuit. *See id.* Plaintiffs note that at the time the Motion was filed, written discovery and depositions had not yet begun. *See* Dkt. 89 at 18. Upon consideration, and in light of the incomplete discovery at the time the Motion was briefed, the Court declines to convert the Motion to one for summary judgment.

### B. MOTION TO DISMISS EVIDENCE

When matters outside the pleadings are presented to the Court, Rule 12(b) requires the Court to either exclude the evidence from its consideration or convert the motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(b); *Carter v. Stanton*, 405 U.S. 669, 671 (1972). When considering a motion to dismiss, the Court may properly consider documents

attached to the motion that are referenced by the complaint and central to the claims. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 598–99 (5th Cir. 2000)).

Here, Plaintiff's Complaint includes several allegations of fraud and breach of contract arising out of the SPA, LOC, MOU, and PRA. *See generally* Dkt. 70. Plaintiffs attached the SPA, LOC, MOU, and PRA to their Complaint. *See* Dkt. 70-1 at 2–10; Dkt. 70-2 at 2; Dkt. 70-2 at 4–10. Upon review of these documents, the Court finds they are central to the claims asserted by Plaintiff and referenced in the Complaint. Therefore, the Court will consider the SPA (70-1 at 2), MOU (70-2 at 2), LOC (70-2 at 4), and PRA (Dkt. 70-2 at 7–10). Likewise, Plaintiffs' claims allege that Defendants committed fraud and negligent misrepresentation by failing to disclose the pending IPRs. *See* Dkt. 70 at ¶¶ 17, 25. Therefore, the attached IPR statements and determinations by the PTO related to the '035 and '738 patents are central to the claims asserted by Plaintiff and referenced in the Complaint. The Court will consider Defendants' Exhibits 11 (Dkt. 77-8), 12 (Dkt. 77-9), 13 (Dkt. 77-10), 14 (Dkt. 77-11), 15 (Dkt. 77-12), 16 (Dkt. 77-13), 17 (Dkt. 77-14), 19 (Dkt. 77-16), and 20 (Dkt. 77-17).

Plaintiffs do not object to the Court considering Defendants' Exhibit 7 (Dkt. 77-4), a PowerPoint presentation, because a later version of the presentation is quoted and referenced by the Complaint. *See* Dkt. 89 at 17 n.90. However, the Court is unaware of what differences exist, if any, between the PowerPoint submitted (Dkt. 77-4) and the PowerPoint relied upon for Plaintiffs' claims. Therefore, the Court declines to consider Defendants' Exhibit 7 (Dkt. 77-4). Likewise, while Plaintiff alleges Defendants used email to perpetuate fraud and negligent misrepresentations, it is unclear whether Plaintiffs refer to the specific emails attached to Defendants' filings. Therefore, the Court declines to consider Defendants' Exhibits 8 (Dkt. 77-5), 9 (Dkt. 77-6), 10

(Dkt. 77-7), A (Dkt. 77-19), B (77-20), or C (Dkt. 77-21). Finally, the Court declines to consider Defendants' Exhibit 17 (Dkt. 77-15), a public article from the website "Law360," as it too is not central to Plaintiffs' claims.

## C. 9(B) PLEADING STANDARD

Defendants argue that Plaintiffs' fraud allegations should be dismissed in their entirety because the allegations are "vague, unspecified[,] and conclusory." *See* Dkt. 77 at 17. Additionally, Defendants argue that any misrepresentations are only attributed to defendant Allen, and not Barrett; hence, the claims against Barrett should be dismissed. *Id.* at 17 n.14. To state a claim for fraud or mistake, a plaintiff must plead with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997); *see also Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) ("In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading.").

Plaintiffs allege Defendants misrepresented and omitted material information during investment negotiations and during the formation of the investment contracts. Specifically, Plaintiffs allege the Cimble PowerPoint contained several knowingly false statements and was used to induce Whiteside's investment. *See* Dkt. 70 at 3. Additionally, Plaintiffs allege specific email communications from Defendants contained both misrepresentations and omissions. *Id.* Plaintiffs allege Cimble and Allen sent several communications directly to Whiteside, and that Barrett, as a shareholder of Cimble and part of the initial communications, was aware of the

9

misrepresentations and omissions but did not attempt to correct them. *See id.* Additionally, Plaintiffs allege Defendants failed to disclose or correct known omissions in the investment documents and sales presentations despite knowledge of their falsity, including failure to disclose the pending IPRs. *See* Dkt. 70 at 4. Plaintiffs' pleadings adequately describe the who, what, when, where and how of Defendants' alleged fraud to satisfy Rule 9(b).

### D. COMMON LAW AND STATUTORY FRAUD CLAIMS

Plaintiffs allege Defendants committed common law fraud. *See* Dkt. 70 at 9–12. "[A] federal court sitting in diversity appl[ies] the substantive law of the forum [s]tate, absent a federal statutory or constitutional directive to the contrary." *Salve Regina College v. Russell*, 499 U.S. 225, 226 (1991). Accordingly, the Court must apply the substantive law of Texas to all of Plaintiffs' fraud claims.

A plaintiff seeking to prevail on a common law fraud claim must show: (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Italian Cowboy Partners, Ltd. V. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Alternatively, a plaintiff may also plead common law fraud by omission by showing: (1) a party concealed or failed to disclose a material fact within the knowledge of that party; (2) the party knew the other party was ignorant of the fact and did not have an equal opportunity to discover the truth; (3) the party intended to induce the other party to take some action by concealing or failing to disclose the fact; and (4) the other party suffered injury as a result of acting without knowledge of the undisclosed fact. *Halprin v. Fed. Deposit Ins. Corp.*, 2018 WL 3603118, at *2

(W.D. Tex. July 6, 2018) (citing *Bradford v. Vento*, 48 S.W.3d 749, 754-55 (Tex. 2001)); *see also TXI Operations, LP v. Pittsburgy & Midway Coal Mining Co.*, 2014 WL 2088911, at *2 (N.D. Tex. Sept. 8, 2004) (noting that omissions are actionable when the defendant is under a duty to disclose, including when a partial disclosure conveys a false impression).

Plaintiffs also allege Defendants committed statutory fraud under Texas Business and Commerce Code § 27.01. *See* Dkt. 70 at 9–12. Fraud in a stock transaction requires: (1) a false representation of a past or existing material fact, that is made to a person for the purpose of inducing that person to enter a contract and is relied on by that person in entering into that contract; or (2) a false promise to do an act where the promise is material, made with the intention of not fulfilling it, to a person for the purpose of inducing them to enter into a contract, and relied on by the person entering the contract. TEX. BUS. & COM. CODE § 27.01(a). "A cause of action for statutory fraud differs from the common law cause of action only in that it does not require proof that the false representation was made knowingly or recklessly." *Robbins v. Copozzi*, 100 S.W.3d 18, 26 (Tex. App.—Tyler, 2002) (citing *Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 259 (Tex. App.—Waco, 2001, *pet. denied*)).

Plaintiffs allege Defendants misrepresented Cimble's value, LunarEye Patent Royalties, intellectual property value, and the status of the '035 and '738 Patents. Dkt. 70 at ¶ 13. Viewing the Complaint in the light most favorable to Plaintiffs, the Court finds that Plaintiffs alleged Defendants disclosed only part of the truth during negotiations and after the SPA was signed. During the lengthy negotiations regarding investment by Kapexia and Whiteside, Defendants made numerous disclosures about the investment via email, the Cimble PowerPoint, and communications to and through other investors. *See* Dkt. 70 at 3. Plaintiffs allege that despite knowledge of the falsity of these statements, Defendants made no corrections or additional

disclosures. Further, Plaintiffs allege they were induced to invest through Kapexia, and that they continued to make payments under the SPA and LOC in reliance on the promises by Defendants to create a marketable product. *See* Dkt. 70 at 5, 7.

Plaintiffs sufficiently allege all elements with the necessary particularity of a common law fraud claim against Defendants. Likewise, because Plaintiffs made the advances due under the SPA and LOC, in reliance on the alleged misrepresentations of Defendants, Plaintiffs may bring an action for statutory fraud. *See Mid States Development, L.L.C. v. Fidelity Nat. Title Ins. Co., Inc.*, 2001 WL 1172215, at *5 (N.D. Tex. Sep. 28, 2001) (noting that Texas Courts do not require privity in a suit under TEX. BUS. & COM. CODE § 27.01). Therefore, Defendants' Motion to Dismiss Plaintiffs' common law and statutory fraud claims is denied.

### E. NEGLIGENT MISREPRESENTATION CLAIM

Under Texas law, a claimant alleging negligent misrepresentation must show the following: (1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation. *Biggers v. BAC Home Loans Serv., LP*, 767 F. Supp. 2d 725, 734 (N.D. Tex. 2011) (quoting *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (internal quotations omitted)); *see also Verdin v. Fed. Nat'l Mortgage Ass'n*, 540 Fed. App'x 253, 255 (5th Cir. 2013).

As described above, Plaintiffs' allegations, taken as true, adequately allege that Defendants supplied false information in the course of investment negotiations with Whiteside. Additionally, Plaintiffs allege that Defendants sought Whiteside's investment for their own pecuniary interest

and Plaintiffs paid Cimble $125,000.00. *See* Dkt. 70 at ¶ 30. Therefore, Defendants Motion as to negligent misrepresentation is denied.

## F. BREACH OF CONTRACT

Defendants argue Plaintiffs' breach of contract claim must be dismissed because there is no privity of contract. Dkt. 77 at 6. "To recover for breach of contract, one must show: (1) the existence of a valid contract; (2) the performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages to the plaintiff as a result of the breach." *Steele v. Green Tree Servicing, LLC*, 2010 WL 3565415, at *4 (N.D. Tex. 2010) (citations omitted); *see Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 55 (Tex. App.—Dallas 2006, *pet. denied*). "The general rule [in Texas] is that one who contracts as [an] agent cannot maintain an action, in his own name and right, upon the contract." *Kakabadze v. M5 Int'l Co.*, 2014 WL 2547767, at *3 (E.D. Tex. June 5, 2014) (quoting *Tinsley v. Powell*, 26 S.W. 946, 948 (Tex. 1894)). Plaintiffs argue an exception to this general rule applies, that an agent may sue in his own name if he "has an interest in the subject-matter of the contract." *See* Dkt. 89 at 23 (citing *Kakabadze*, 2014 WL 2547767, at *3). Plaintiffs argue that because both Whiteside and Autoficio made loan payments to Cimble under the SPA and LOC, they have an interest in the underlying contract. *See* Dkt. 89 at 23–25 (citing *Kakabadze v. M5 Int'l Co.*, 2014 WL 2547767, at *3 (E.D. Tex. June 5, 2014); *Perry v. Breland*, 16 S.W.3d 182, 187 (Tex. App.—Eastland, 2000)).

In Texas, courts recognize an exception to the general rule that agents cannot maintain an action in their own name where the agent has an interest in the underlying contract. *See Kakabadze*, 2014 WL 2547767, at *3; *see also Tinsley v. Dowell*, 26 S.W. 946, 948 (Tex. 1894); *Wilson County Peanut Co. v. Hahn*, 364 S.W.2d 468, 470 (Tex. Civ. App.—San Antonio 1963, no writ). An

interest in the underlying contract can arise where the agent proves he has an agreement with the principal or where the agent advances funds or makes payments under the contract. *See id.*; *Perry*, 16 S.W.3d at 187; *Harper v. Welchem, Inc.*, 1992 WL 198620, at *2 (Tex. App.—Houston [14th Dist.] 1992) (collecting cases).

Plaintiffs here allege they made payments to Defendants under the SPA and LOC. *See* Dkt. 70 at ¶ 30. Additionally, Plaintiffs allege Defendants were aware the payments came from Whiteside and Autoficio, not Kapexia. *See, e.g.,* Dkt. 70 at 8. Therefore, Plaintiffs have standing at this stage of the litigation to bring this action, as they have an interest in the subject matter of the lawsuit. Upon consideration, the Court finds Defendants' Motion to Dismiss Plaintiffs breach of contract claim is denied.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion (Dkt. 77) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 4th day of December, 2018.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE