IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BRIAN WHITESIDE and AUTOFICIO, LLC, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:17-cv-404-KPJ |
| CIMBLE CORPORATION, ALVIN ALLEN, and PAUL BARRETT, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The following motions are pending before the Court:

- Defendants Alvin Allen ("Allen") and Paul Barrett's ("Barrett") Motion to Dismiss and to Vacate and Set Aside the Verdict (the "Motion to Dismiss") (Dkt. 280). The Motion to Dismiss is fully briefed: Plaintiffs Brian Whiteside ("Whiteside") and Autoficio, LLC ("Autoficio", and together with Whiteside, "Plaintiffs") filed a response (Dkt. 286), Allen and Barrett filed a reply (Dkt. 293), and Plaintiffs filed a sur-reply (Dkt. 296).

- Allen, Barrett, and co-defendant Cimble Corporation's ("Cimble", and together with Allen and Barrett, "Defendants") Motion to Stay Entry of Judgment Pending Resolution of the Motion to Dismiss (the "Motion to Stay") (Dkt. 279), to which Plaintiffs filed a response (Dkt. 287).

Upon consideration, the Motion to Dismiss (Dkt. 280) is **DENIED**. The Motion to Stay (Dkt. 279) is **DENIED AS MOOT**.

### I.   BACKGROUND

**A. Relevant Factual Background**

This case was tried before a jury in November 2021, after which Cimble, Allen, and Barrett were found liable for fraud and negligent misrepresentation.[1] *See* Dkt. 259. In the Motion to

---

[1] Cimble was also found liable for breach of contract. *See* Dkt. 259.

1

Dismiss, Allen and Barrett request the Court set aside and vacate the jury verdict against them on the basis of judicial estoppel. *See* Dkt. 280. Allen and Barrett argue Plaintiffs asserted a clearly inconsistent legal position in a separate lawsuit, which, if applied here, would absolve Allen and Barrett of liability. *See id.* Only the facts relevant to the Motion to Dismiss are summarized herein.

In 2014, former plaintiff Kapexia, LLC ("Kapexia") and Cimble entered a Share Purchase and Option Agreement (the "SPA") and a Memorandum of Understanding (the "MOU"). *See* Dkts. 70-1, 70-2. The MOU incorporated two ancillary agreements, the Line of Credit Agreement (the "LOC") and the Party Roles Agreement ("PRA", and together with the SPA, MOU, and LOC, the "Agreements"). *See* Dkt. 70-2. Allen and Barrett negotiated the Agreements on behalf of Cimble, and Whiteside and others negotiated on behalf of Kapexia. Dkt. 254 at 15–16. Allen then executed the Agreements on behalf of Cimble, and Whiteside executed the Agreements on behalf of Kapexia. *See* Dkts. 70-1, 70-2. Allen, Whiteside, and Autoficio[2] were not parties to the Agreements. *See* Dkts. 70-1, 70-2.

Under the SPA, Kapexia agreed to pay Cimble $300,000 in exchange for 7.14% of Cimble shares. *See* Dkt. 254 at 16; Dkt. 70-1. Whiteside wired $300,000 to Cimble from his personal account to satisfy Kapexia's responsibilities under the SPA. Dkt. 254 at 16. Under the MOU and related LOC and PRA, Kapexia agreed to loan Cimble $125,000 for product development purposes. *Id.*; *see* Dkt. 70-2. Whiteside and Autoficio funded the loan on behalf of Kapexia: Whiteside wired $25,000 to Cimble from his personal bank account and $100,000 from Autoficio's bank account. Dkt. 254 at 16.

---

[2] Autoficio was formed on August 20, 2014, Dkt. 254 at 15, to facilitate Kapexia's investment in Cimble. *See* Dkt. 274 at 180:24–181:22. During trial, Whiteside testified Kapexia was intended to merge into Autoficio and "Autoficio was given all the funds to pay all the debts both of Autoficio and with Cimble." *See* Dkt. 181:2–4. Whiteside has always been Autoficio's sole member and manager. Dkt. 70 at 1.

On June 8, 2017, Kapexia and Autoficio filed this lawsuit against Defendants alleging Cimble failed to perform under the Agreements and that Defendants defrauded Kapexia and Autoficio into entering the Agreements and investing in Cimble. *See* Dkt. 1. On April 13, 2018, a Second Amended Complaint was filed, which removed Kapexia as a plaintiff and substituted Whiteside in its place. *See* Dkt. 70 n.1. In the Second Amended Complaint, Plaintiffs Whiteside and Autoficio alleged Defendants breached or caused the breach of the SPA and LOC and, additionally, that Defendants defrauded Plaintiffs into making payments to Cimble pursuant to the Agreements and as agents of Kapexia. *See* Dkt. 70.

Nearly three years after this case was filed, Defendants sought to bring counterclaims against Plaintiffs, asserting that Plaintiffs defrauded Allen into entering the Agreements on Cimble's behalf. The Court denied Defendants' request and, on February 6, 2020, Allen, proceeding *pro se*, filed a separate lawsuit against Plaintiffs and others, alleging claims for fraud and civil conspiracy related to the Agreements. *See* Second Amended Complaint (Dkt. 22), *Allen v. Zink*, No. 1:20-cv-45 (E.D. Tex. filed Feb. 6, 2020) (the "Beaumont Lawsuit"). In the Beaumont Lawsuit, Allen argued Plaintiffs defrauded Allen into entering the Agreements on Cimble's behalf. *See id.* Plaintiffs moved to dismiss Allen's claims for lack of standing. *See* Beaumont Lawsuit Dkt. 27. Plaintiffs argued that Allen did not have a personal interest in the Agreements and, therefore, any injuries to Allen arising from the Agreements were incidental to Allen's injuries as a shareholder in Cimble. *See* Beaumont Lawsuit Dkt. 27 at 14–16; *see also* Beaumont Lawsuit Dkt. 52 at 2–3 (Reply in Support of Motion to Dismiss); Dkt. 61 at 11–13 (Response to Allen's Motion for Leave to File Third Amended Complaint); Dkt. 71 (Response to Allen's Objections to Report and Recommendation). As a result, Plaintiffs argued Allen's claims were derivative in nature and that Allen lacked standing to proceed *pro se* under Texas law. *See* Beaumont Lawsuit Dkt. 27 at

14–16. The Beaumont Court agreed, finding that Allen failed to allege any personal injury arising from the Agreements and that Cimble "would recover any damages resulting from [Allen's] claims." *See* Beaumont Lawsuit Dkt. 72; *accord* Beaumont Lawsuit Dkt. 62 ("Allen's own exhibits contradict his claim that he was *personally* injured by the investment. When Allen signed all the financial agreements, he signed *as President* of Cimble Corp. According to the contracts, Allen signed as an officer of the corporation, not as an individual shareholder selling personal shares." (internal citations omitted)). Because the Beaumont Court found Allen asserted only derivative claims on Cimble's behalf, the court ordered Cimble to retain counsel to proceed in the Beaumont Lawsuit. *See* Beaumont Lawsuit Dkt. 62. Cimble failed to retain counsel, and the Beaumont Lawsuit was subsequently dismissed for lack of standing. *See* Beaumont Lawsuit Dkt. 72.

Allen and Barrett argue Plaintiffs' position as to standing in the Beaumont Lawsuit is clearly inconsistent with Plaintiffs' positions in this lawsuit that: (a) Plaintiffs have standing to sue under the Agreements, even though they (like Allen) were not parties to the Agreements; and (b) Allen and Barrett may be held liable in their individual capacities for claims arising from Agreements, even though Allen could not assert claims under the Agreements in his individual capacity. *See* Dkt. 280. Plaintiffs argue judicial estoppel does not apply for four reasons: (1) Plaintiffs did not take a clearly inconsistent position in the Beaumont lawsuit; (2) Plaintiffs' position in the Beaumont Lawsuit is not a "prior position" subject to judicial estoppel; (3) Plaintiffs did not assert a clearly inconsistent position to derive an unfair advantage or impose an unfair detriment on Defendants; and (4) Defendants failed to timely raise judicial estoppel as a defense to Plaintiffs' claims. *See* Dkt. 286.

4

**B. Relevant Procedural History**

This case was filed on June 8, 2017.[3] *See* Dkt. 1. Defendants filed a motion to dismiss. *See* Dkt. 11. Autoficio and Kapexia then filed a First Amended Complaint, *see* Dkt. 13, and Defendants filed a second motion to dismiss. *See* Dkt. 23. On January 25, 2018, the parties were ordered to file supplemental briefing setting forth the basis, or lack thereof, for the Court's jurisdiction over this case, *see* Dkt. 58, and all parties filed briefing. *See* Dkts. 61, 63, 65, 66. Subsequently, Plaintiffs filed the Second Amended Complaint, which substituted Whiteside for Kapexia as a plaintiff in this action. *See* Dkt. 70. Defendants then filed a third motion to dismiss, arguing Plaintiffs Whiteside and Autoficio lacked standing to bring their claims. *See* Dkt. 77. Plaintiffs filed a response, wherein they argued that "both Whiteside and Autoficio have an interest in the subject matter of the contract" and therefore "have standing to bring this suit" under Texas law. *See* Dkt. 89 at 25. On December 4, 2018, the Court denied Defendants' motion to dismiss the Second Amended Complaint. *See* Dkt. 113.

On December 27, 2018, Defendants filed an Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint, which remained Defendants' live answer through the trial of this matter. *See* Dkt. 114. Defendants raised thirty-five affirmative defenses, including as follows: "j. The complaint should be barred, in whole or in part, by the doctrine of laches, waiver, and/or estoppel (including but not limited to equitable, and/or judicial estoppel)." *See* Dkt. 114 at 14. During a deposition taken on November 19, 2019, Allen was asked about the factual basis for the foregoing defense. *See* Dkt. 286-1. Allen testified as follows:

> I'm going to let—you're going to have to—okay. So (j) is the complaint should be barred in whole or part by the doctrine of laches, not limited to . . . I mean, obviously, you know, we're talking about laches in here and estoppel in here and

---

[3] On January 8, 2018, this case was referred to the undersigned for pretrial proceedings pursuant to 28 U.S.C. § 636. *See* Dkt. 51. On October 12, 2018, this matter was referred to the undersigned for all further proceedings and entry of judgment by consent of the parties. *See* Dkt. 108.

> they should have taken—they should have taken steps to minimize their own damage. I mean, it's one of those you have a right—you have an obligation to protect yourself.
>
> Whiteside knew that this document was blown up on the 12th—on August 12th of 2014. You just handed me an email a while ago where he was venting about he didn't sign an agreement or none of that. So at that point in time he should have stopped this deal. He should have come to me and said, guess what, I signed those documents and I'm not the manager or the member and let's fix that. And had we done that right then, Kapexia and Cimble would have both been alive; but the fact that he didn't killed our company.

*See* Dkt. 286-1 at 5–6. When asked if there was "any other factual basis for the affirmative defense," Allen said, "Not at this time." *See id.* at 6.

Three days later, on November 22, 2019, Defendants filed a motion for summary judgment, wherein they argued, once again, that Plaintiffs lacked standing to bring suit under the Agreements. *See* Dkt. 137. Plaintiffs filed a response, wherein they, again, argued they had standing to sue under the Agreements because they had personal interests in the subject matter of the Agreements. *See* Dkt. 142 at 31. After a hearing on the motion, *see* Dkt. 192, the Court granted the motion, in part, as to two issues not presently before the Court. *See* Dkt. 197. The Court denied the motion as to Defendants' remaining arguments, including Defendants' argument that Plaintiffs lacked standing to sue under the Agreements. *See id.*

This case was set to proceed to trial on March 2, 2020. *See* Dkt. 148. On January 24, 2020, in preparation for trial, the parties filed a Final Pretrial Order. *See* Dkt. 152. Shortly thereafter, on February 6, 2020, Allen filed the Beaumont Lawsuit. *See* Beaumont Lawsuit Dkt. 1. On February 24 and 28, 2020, the parties appeared for pretrial conferences in this action. But the trial of this matter was continued multiple times due to the COVID-19 pandemic, and this case was administratively closed on March 26, 2021, by agreement of the parties. *See* Dkt. 208. The

Beaumont Lawsuit was dismissed the same day this case was administratively closed. *See* Beaumont Lawsuit Dkt. 72.

This case was reopened on October 18, 2021. *See* Dkt. 214. On October 22, 2021, the parties filed an updated Final Pretrial Order, wherein Defendant asserted that "by virtue of Plaintiffs' judicial admissions, they are judicially estopped from asserting claims against Defendants Allen and Barrett in their individual capacity . . . ." *See* Dkt. 219 at 3. Defendants also addressed Allen's claims in the Beaumont Lawsuit, contending that Allen learned of Plaintiffs' allegedly fraudulent conduct during Whiteside's February 2019 deposition. *Id.* The parties then filed trial briefs addressing, *inter alia*, Defendants' affirmative defense of judicial estoppel. *See* Dkts. 234, 239. This case was tried before a jury from November 2, 2021, until November 8, 2021. *See* Dkts. 249, 250, 251, 252, 255. On November 8, 2021, the jury entered a verdict in favor of Plaintiffs. *See* Dkt. 259.

On December 15, 2021, Plaintiffs filed a Motion for Entry of Judgment (Dkt. 271), which was fully briefed by the parties. *See* Dkts. 271, 281, 288, 294. On January 14, 2022, Defendants moved to stay the Court's entry of judgment pending disposition of Allen and Barrett's concurrently filed Motion to Dismiss (Dkt. 280). *See* Dkt. 279. Plaintiffs opposed Defendants' request to stay the entry of judgment, *see* Dkt. 287, as well as Allen and Barrett's Motion to Dismiss, *see* Dkt. 286. The Motion to Dismiss is fully briefed by the parties. *See* Dkts. 280, 286, 293, 296.

## II.     LEGAL STANDARD

"Judicial estoppel is an equitable doctrine, invoked at the court's discretion, to 'protect the integrity of the judicial process.'" *Firefighters' Ret. Sys. v. EisnerAmper, L.L.P.*, 898 F.3d 553, 558 (5th Cir. 2018) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). Judicial

estoppel prevents litigants from abusing the judicial system by "prevent[ing] a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire*, 532 U.S. at 749 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)); *accord In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) ("The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." (cleaned up) (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988))). Although several factors guide the district court's application of judicial estoppel,[4] two elements must be satisfied before a party can be estopped. *Haverkamp v. Linthicum*, 6 F.4th 662, 671 n.8 (5th Cir. 2021) (quoting *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003)). "First, it must be shown that the position of the party to be estopped is clearly inconsistent with its previous one; and second, that party must have convinced the court to accept that previous position." *Id.*

### III. ANALYSIS

As discussed herein, the Court finds Allen and Barrett have not identified a clearly inconsistent position taken by Plaintiffs. Therefore, judicial estoppel cannot apply.[5] *See id.*

**A. Plaintiffs' positions as to standing are not clearly inconsistent.**

As an initial matter, Plaintiffs did not take clearly inconsistent positions as to standing. In the Beaumont Lawsuit, Plaintiffs argued Allen only alleged injuries that were incidental to his injuries as a Cimble shareholder and, therefore, only brought derivative claims. *See* Beaumont

---

[4] Several factors guide the doctrine's application, including "whether a party's later position is clearly inconsistent with its earlier position, whether the party has succeeded in persuading a court to accept that party's earlier position, and whether absent estoppel the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party." *Matter of 3 Star Properties, L.L.C.*, 6 F.4th 595, 605 (5th Cir. 2021) (cleaned up) (quoting *New Hampshire*, 532 U.S. at 750–51).

[5] Because Allen and Barrett have not asserted a clearly inconsistent position taken by Plaintiffs, as required to apply judicial estoppel, the Court need not address Plaintiffs' remaining arguments. *See Haverkamp*, 6 F.4th 662 at 671 n.8.

Lawsuit Dkts. 27, 52, 61, 71. Plaintiffs argued that, under Texas Law, Allen did not have standing to bring his derivative claims *pro se*. *See* Beaumont Lawsuit Dkt. 27 at 14–16.

In this case, by contrast, Plaintiffs alleged they were personally injured; they did not assert derivative claims. *See* Dkt. 70. Plaintiffs asserted standing based on the rule, in Texas, that an agent can personally sue under an agreement entered between the principal and a third party if the agent has a personal interest in the subject matter of the agreement. *See Kakabadze v. M5 Int'l Co., Inc.*, No. H-12-3701, 2014 WL 2547767, at *3 (S.D. Tex. June 5, 2014) (quoting *Tinsley v. Powell*, 26 S.W. 946, 948 (Tex. 1894)); *Perry v. Breland*, 16 S.W.3d 182, 187 (Tex. App.—Eastland 2000, pet. denied). In this case, Whiteside and Autoficio established personal interests in the subject matter of the Agreements—and therefore standing to sue—because they personally made payments under the Agreements and on Kapexia's behalf. *See, e.g.*, *Kakabadze*, 2014 WL 2547767, at *3 (holding an agent who provided monetary consideration under the agreement had an interest in the subject matter of the agreement and, therefore, had standing to sue thereunder); *Perry*, 16 S.W.3d at 187–88 (same).

The Court finds there is no clear inconsistency between Plaintiffs' position in the Beaumont Lawsuit, that Allen lacked standing to bring derivative claims *pro se*, and Plaintiffs' position in this lawsuit, that Plaintiffs had standing to sue under the Agreements because they personally made payments thereunder.

### B. Plaintiffs' positions as to individual liability are not clearly inconsistent.

Plaintiffs' position in the Beaumont Lawsuit, that Allen did not have standing to assert claims in his individual capacity, is not clearly inconsistent with Plaintiffs' position in this lawsuit that Allen and Barrett are subject to personal liability. This is because Allen and Barrett's standing to assert claims under the Agreements in their individual capacities is irrelevant to whether they

may be held individually liable for claims arising under the Agreements. In Texas, corporate agents—such as Allen and Barrett—may be held personally liable for their own fraudulent or tortious acts. *Thule Drilling ASA v. Schimberg*, 290 F. App'x 745, 747 (5th Cir. 2008) (per curiam) (quoting *Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002)); *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 666 (W.D. Tex. 2019) ("The law is well-settled that a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation." (quoting *Kingston v. Helm*, 82 S.W.3d 755, 759 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied))). Hence, Texas law permits Plaintiffs to recover against Allen and Barrett, individually, for Allen and Barrett's fraudulent and/or tortious acts in negotiating, executing, or directing Cimble's performance under the Agreements—even if Allen and Barrett lack standing to sue under the Agreements in their individual capacities.[6] Accordingly, the Court finds Plaintiffs' theory of liability in this case is not clearly inconsistent with Plaintiffs' position as to standing in the Beaumont Lawsuit.

### IV. CONCLUSION

Because Allen and Barrett have not identified any clearly inconsistent positions taken by Plaintiffs, the Court finds judicial estoppel does not apply. Accordingly, the Motion to Dismiss (Dkt. 280) is **DENIED**. The Motion to Stay (Dkt. 279) is **DENIED AS MOOT**.

**So ORDERED and SIGNED this 23rd day of May, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE

---

[6] The Court notes that, had Cimble retained counsel in the Beaumont Lawsuit, the same rule would have allowed Cimble to seek relief for Plaintiffs' allegedly fraudulent and/or tortious acts.