IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BRIAN WHITESIDE and AUTOFICIO, LLC, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:17-cv-404-KPJ |
| CIMBLE CORP., ALVIN ALLEN, and PAUL BARRETT, | § § § § | |
| Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Cimble Corp. ("Cimble"), Alvin Allen ("Allen"), and Paul Barrett's ("Barrett") (collectively, "Defendants") Motion to Dismiss for Lack of Standing After Trial (the "Motion") (Dkt. 328), to which Plaintiffs Brian Whiteside ("Whiteside") and Autoficio, LLC ("Autoficio") (collectively, "Plaintiffs") filed a response (the "Response") (Dkt. 348), and Defendants filed a reply (the "Reply") (Dkt. 352). For the following reasons, the Court **DENIES** the Motion (Dkt. 328).

### I. BACKGROUND

**A.  Relevant Factual Background**

This case was tried before a jury in November 2021, after which Defendants were found liable for fraud and negligent misrepresentation, and Cimble was found liable for breach of contract. *See* Dkt. 259. In the Motion (Dkt. 328), Defendants request the Court "[d]ismiss this action" because Plaintiffs "do not have standing to pursue this matter." Dkt. 328 at 1, 14. Only the facts relevant to the Motion (Dkt. 328) are summarized herein.

1

In 2014, former plaintiff Kapexia, LLC ("Kapexia") and Cimble entered a Share Purchase and Option Agreement (the "SPA") and a Memorandum of Understanding (the "MOU"). *See* Dkts. 70-1; 70-2. The MOU incorporated two ancillary agreements, the Line of Credit Agreement (the "LOC") and the Party Roles (the "PR" and, together with the SPA, MOU, and LOC, the "Agreements"). *See* Dkt. 70-2. Allen and Barrett negotiated the Agreements on behalf of Cimble, and Whiteside and others negotiated on behalf of Kapexia. Dkt. 254 at 15–16. Allen then executed the Agreements on behalf of Cimble, and Whiteside executed the Agreements on behalf of Kapexia. *See* Dkts. 70-1; 70-2. Allen, Whiteside, and Autoficio[1] were not parties to the Agreements. *See* Dkts. 70-1; 70-2.

Under the SPA, Kapexia agreed to pay Cimble $300,000 in exchange for 7.14% of Cimble shares. *See* Dkt. 254 at 16; Dkt. 70-1. Whiteside wired $300,000 to Cimble from his personal account to satisfy Kapexia's responsibilities under the SPA. Dkt. 254 at 16. Under the MOU and related LOC and PR, Kapexia agreed to loan Cimble $125,000 for product development purposes. *Id.*; *see* Dkt. 70-2. Whiteside and Autoficio funded the loan on behalf of Kapexia: Whiteside wired $25,000 to Cimble from his personal bank account and $100,000 from Autoficio's bank account. Dkt. 254 at 16.

In 2017, Kapexia and Autoficio filed this lawsuit against Defendants alleging that Cimble failed to perform under the Agreements and Defendants defrauded Kapexia and Autoficio into entering the Agreements and investing in Cimble. *See* Dkt. 1. On April 13, 2018, a Second Amended Complaint (Dkt. 70) was filed, which removed Kapexia as a plaintiff and substituted Whiteside. *See* Dkt. 70 at 1 n.1. In the Second Amended Complaint (Dkt. 70), Plaintiffs alleged

---

[1] Autoficio was formed on August 20, 2014, Dkt. 254 at 15, to facilitate Kapexia's investment in Cimble. *See* Dkt. 274 at 180:24–181:22. During trial, Whiteside testified that Kapexia was intended to merge into Autoficio, and "Autoficio was given all the funds to pay all the debts both of Autoficio and with Cimble." *See* Dkt. 181:2–4. Whiteside has always been Autoficio's sole member and manager. Dkt. 70 at 1.

2

that Defendants breached or caused the breach of the SPA and LOC and, additionally, that Defendants defrauded Plaintiffs into making payments to Cimble pursuant to the Agreements and as agents of Kapexia. *See* Dkt. 70 at 9–15.

B.     **Relevant Procedural History**

This case was filed on June 8, 2017.[2] *See* Dkt. 1. After Defendants filed a motion to dismiss, *see* Dkt. 11, Autoficio and Kapexia filed the First Amended Complaint (Dkt. 13), *see* Dkt. 13, and Defendants filed a second motion to dismiss, *see* Dkt. 23. On January 25, 2018, the Court ordered the parties to file supplemental briefing setting forth the basis, or lack thereof, for the Court's jurisdiction over this case, *see* Dkt. 58, and all parties filed briefing. *See* Dkts. 61; 63; 65–66. Subsequently, Plaintiffs filed the Second Amended Complaint (Dkt. 70), which substituted Whiteside for Kapexia as a plaintiff in this action. *See* Dkt. 70 at 1 n.1. Defendants then filed a third motion to dismiss, arguing Plaintiffs Whiteside and Autoficio lacked standing to bring their claims. *See* Dkt. 77 at 10. Plaintiffs filed a response, wherein they argued that "both Whiteside and Autoficio have an interest in the subject matter of the contract" and, therefore, "have standing to bring this suit" under Texas law. *See* Dkt. 89 at 25. On December 4, 2018, the Court denied Defendants' motion to dismiss the Second Amended Complaint (Dkt. 70). *See* Dkt. 113 at 1.

On December 27, 2018, Defendants filed the Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint (Dkt. 114), which remained Defendants' live pleading through trial. *See* Dkt. 114. On November 22, 2019, Defendants filed a motion for summary judgment, wherein they argued, once again, that Plaintiffs lacked standing to bring suit under the Agreements. *See* Dkt. 137 at 29. Plaintiffs filed a response, wherein they re-urged their argument

---

[2] On January 8, 2018, this case was referred to the undersigned for pretrial proceedings pursuant to 28 U.S.C. § 636. *See* Dkt. 51. On October 12, 2018, this matter was referred to the undersigned for all further proceedings and entry of judgment by consent of the parties. *See* Dkt. 108.

3

that they had standing to sue under the Agreements because they had personal interests in the subject matter of the Agreements. *See* Dkt. 142 at 31. After a hearing, *see* Dkt. 192, the Court denied the motion to the extent it sought dismissal based on Plaintiffs' lack of standing to sue under the Agreements. *See* Dkt. 197 at 27.

This case was set to proceed to trial on March 2, 2020. *See* Dkt. 148. On January 24, 2020, in preparation for trial, the parties filed the Joint Final Pre-Trial Order (Dkt. 152). *See* Dkt. 152. On February 24, 2020, and February 28, 2020, the parties appeared for pretrial conferences in this action. *See* Dkts. 178; 216. But the trial of this matter was continued multiple times due to the COVID-19 pandemic, and this case was administratively closed on March 26, 2021, by agreement of the parties. *See* Dkt. 208. This case was reopened on October 18, 2021. *See* Dkt. 214. On October 22, 2021, the parties filed a Revised Joint Final Pre-Trial Order (Dkt. 219), wherein Defendants asserted that "Plaintiffs lack contractual capacity and standing to bring suit against any one of the Defendants." *See* Dkt. 219 at 8. The parties then filed trial briefs addressing, *inter alia*, Defendants' affirmative defense of contractual standing. *See* Dkts. 234 at 3–5; 239 at 11–12. This case was tried before a jury from November 2, 2021, to November 8, 2021. *See* Dkts. 249–52; 255. On November 8, 2021, the jury entered a verdict in favor of Plaintiffs. *See* Dkt. 259.

On December 15, 2021, Plaintiffs filed a Motion for Entry of Judgment (Dkt. 271), which was fully briefed by the parties. *See* Dkts. 271; 281; 288; 294. On January 14, 2022, Defendants filed a post-trial motion to dismiss, wherein Defendants argued that Plaintiffs should be judicially estopped from asserting that they have standing because this is "plainly inconsistent with certain judicial admissions and legal positions" asserted by Plaintiffs in a concurrent lawsuit. *See* Dkt. 280 at 1. The Court denied the motion to dismiss, finding that "there is no clear inconsistency" between Plaintiffs' position on standing in this lawsuit and the concurrent lawsuit. *See* Dkt. 297 at 8–9.

On September 28, 2022, the Court issued the Final Judgment (Dkt. 301) awarding Whiteside the sum of $518,000 from Allen and $156,250 from Barrett with associated pre- and post-judgment interest. *See* Dkt. 301 at 1. Following the Final Judgment (Dkt. 301), Plaintiffs and Defendants filed a plethora of post-judgment motions including, but not limited to, motions for attorney fees, re-election of remedies, and new trial. *See* Dkts. 304; 307–09; 328; 339. Among these motions is the instant Motion (Dkt. 328), wherein Defendants assert—yet again—that Plaintiffs lack standing to assert claims associated with the Agreements. *See* Dkt. 328 at 6. Plaintiffs filed their response (the "Response") (Dkt. 331), wherein they argue that Defendants have repeatedly litigated standing, and the Court should not deviate from its prior rulings on this issue. *See* Dkt. 331 at 2–3. The Motion (Dkt. 328) is fully briefed. *See* Dkts. 328; 331; 337.

## II. LEGAL ANALYSIS

"Federal courts, both trial and appellate, have a continuing obligation to examine the basis for their jurisdiction. The issue may be raised by parties, or by the court *sua sponte*, at any time." *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990) (first citing FED. R. CIV. P. 12(h)(3); then citing *Baker Oil Tools, Inc. v. Delta S.S. Lines, Inc.*, 562 F.2d 938, 940 n.2 (5th Cir. 1977); and then citing *Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir. 1980)). Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Raines v. Byrd*, 521 U.S. 811, 819 (1997)) (cleaned up). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S.

5

555, 560–61 (1992)). Article III standing is jurisdictional and requires strict compliance. *Raines*, 521 U.S. at 819; *see also Norris v. Causey*, 869 F.3d 360, 366 (5th Cir. 2017) ("Standing of the constitutional variety—the well-known injury, causation, and redressability trifecta—is a question of subject matter jurisdiction.").

But "[s]tanding in federal court is determined *entirely by Article III* and depends in no degree on whether standing exists under state law." *Abraugh v. Altimus*, 26 F.4th 298, 303 (5th Cir. 2022) (emphasis in original) (citations omitted). Thus, an absence of contractual standing, a concept of state law, does not implicate subject matter jurisdiction. *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021). The Fifth Circuit recently explained that the absence of a contractual right to bring the suit relates to contractual standing and

> such questions do not go to the court's subject matter jurisdiction, but are instead part of the inquiry into the merits of a particular claim. *Cf. Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014). "[U]nlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). Likewise, "[c]ontractual standing is distinct from Article III standing and does not implicate subject-matter jurisdiction." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020). "Article III standing speaks to the power of a court to adjudicate a controversy; contractual standing speaks to a party's right to relief for breach of contract." *Id.* So where, as here, a case turns on the validity of an assignment of contractual rights, that is not "a question of Article III standing" but "one of contractual standing." *Id.*

*Maxim Crane Works, L.P.*, 11 F.4th at 350–51.

Here, Defendants brought the Motion (Dkt. 328) as a motion to dismiss based upon a lack of Article III standing, implicating the Court's subject matter jurisdiction. *See* Dkt. 328 at 1–2. Under Rule 12, the Court has the continuing obligation to assess subject matter jurisdiction. FED. R. CIV. P. 12(h)(3). The arguments raised in the Motion (Dkt. 328) concern whether Plaintiffs had contractual standing. Specifically, Defendants argue that Plaintiffs "had no obligation under the

6

contract, made no representations under the contract, and could not be sued under the contract" because Plaintiffs acted as agents for Kapexia. *See* Dkt. 328 at 14. As the Fifth Circuit recently held, contractual standing "is not 'a question of Article III standing'" and "does not implicate subject-matter jurisdiction." *See Maxim Crane Works, L.P.*, 11 F.4th at 350–51. Accordingly, Defendants' argument is that Plaintiffs have failed to state a claim upon which relief can be granted, a Rule 12(b)(6) argument, rather than an argument that Plaintiffs lack constitutional standing, a Rule 12(b)(1) argument. *See id.* at 350 ("[A] dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." (quoting *FNC, Inc.*, 634 F.3d at 795 n.2)). Under Rule 12, a motion to dismiss for failure to state a claim can be asserted "in any pleading allowed or ordered under Rule 7(a); by a motion under Rule 12(c); or at trial." FED. R. CIV. P. 12(h)(2). Defendants filed the Motion (Dkt. 328) two years and eight months after the jury entered its verdict. Such a late-filed motion to dismiss, asserting failure to state a claim, is not contemplated by the Federal Rules of Civil Procedure. Accordingly, the Motion (Dkt. 328) is untimely.

However, even if the Court was to reach the merits of the Motion (Dkt. 328), it would find Defendants' argument unavailing. Defendants argue that Plaintiffs did not have standing to sue pursuant to their role as agents for Kapexia because "Plaintiffs had no obligation under the contract, made no representations under the contract, and could not be sued under the contract." Dkt. 328 at 14. This is the same argument that Defendants have asserted throughout these proceedings, including at the following stages: motion to dismiss, motion for summary judgment, trial, and post-trial. *See* Dkts. 77 at 4–16; 137 at 24–30; 256 at 20–21; 280 at 7–13. At each stage, the Court considered this argument and found that Plaintiffs have contractual standing. *See* Dkts. 113 at 13–14; 197 at 8–14; 297 at 8–9; 301. Specifically, the Court has found that "Whiteside and Autoficio established personal interests in the subject matter of the Agreements—and therefore

7

standing to sue—because they personally made payments under the Agreements and on behalf of Kapexia." Dkt 297 at 9. Not only has the Court repeatedly found that Plaintiffs have contractual standing, but the jury considered and resolved this fact issue in Plaintiffs' favor. *See* Dkts. 219 at 8; 256 at 20–21; 259 at 6–7. The Motion (Dkt. 328) does not present any new evidence or raise any argument that this is an extraordinary circumstance warranting reconsideration by the Court. *See* FED. R. CIV. P. 60(b). Accordingly, the Motion (Dkt. 328) is denied.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion (Dkt. 328).

**So ORDERED and SIGNED this 29th day of March, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE