IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **BRIAN WHITESIDE and AUTOFICIO, LLC,** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **Civil Action No. 4:17-cv-404-KPJ** |
| **CIMBLE CORP., ALVIN ALLEN, and PAUL BARRETT,** | § § § | |
| **Defendants.** | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are the following motions:

- Plaintiff Brian Whiteside's ("Whiteside") Motion to Amend the Judgment for Re-Election of Remedies (the "Motion to Amend") (Dkt. 308), to which Defendants Cimble Corp. ("Cimble"), Alvin Allen ("Allen"), and Paul Barrett ("Barrett") (collectively, "Defendants") filed a response, and Whiteside filed a reply; and

- Whiteside's Motion for Award of Attorneys' Fees (the "Motion for Attorney Fees") (Dkt. 307), to which Defendants filed a response, and Whiteside filed a reply.

For the following reasons, the Court **GRANTS** the Motion to Amend (Dkt. 308) and **GRANTS IN PART** and **DENIES IN PART** the Motion for Attorney Fees (Dkt. 307).

## I.    BACKGROUND

This case was tried before a jury in November 2021. *See* Dkts. 249; 250–52; 255. At trial, Whiteside and Autoficio, LLC ("Autoficio") (collectively, "Plaintiffs") sought to recover damages against Defendants pursuant to two contracts—the Share Purchase and Option Agreement (the "SPA") and the Line of Credit Agreement (the "LOC"). *See* Dkt. 254. At the conclusion of the trial, the jury returned a verdict finding Defendants liable for fraud and negligent

misrepresentation, and Cimble liable for breach of contract. *See* Dkt. 259. The jury awarded and apportioned damages as follows:

| Claim | Actual Damages (Awarded to) | Percentage Responsibility | Exemplary Damages |
|---|---|---|---|
| Common Law Fraud | $425,000 (Whiteside) | Whiteside: 0%<br>Allen: 75%<br>Barrett: 25%<br>Cimble: 0% | Allen: $200,000<br>Barrett: $50,000<br>Cimble: $0<br>Cimble, *imputed based on Allen and Barrett's conduct*: $200,000 |
| Statutory Fraud | $300,000 (Whiteside) | Whiteside: 0%<br>Allen:75%<br>Barrett: 25%<br>Cimble: 0% | Allen: $237,000<br>Barrett: $15,000<br>Cimble: $0 |
| Negligent Misrepresentation | $850,000 (Whiteside) | Whiteside: 0%<br>Allen: 75%<br>Barrett: 25%<br>Cimble: 0% | |
| Breach of the SPA | $300,000 (Whiteside) | | |
| Breach of the LOC | $25,000 (Whiteside)<br>$100,000 (Autoficio) | | |

*See* Dkt. 259.

On December 15, 2021, Plaintiffs filed their Motion for Entry of Judgment (Dkt. 271), wherein Plaintiffs requested the Court enter a final judgment awarding damages under both their common law and statutory fraud theories, as follows:

- Whiteside take actual damages of $318,750 from Allen and $106,250 from Barrett;

- Whiteside take exemplary damages of $437,000 from Allen, $65,000 from Barrett, and $200,000 from Cimble;

- Autoficio take actual damages of $100,000 from Cimble; and

- Pre- and post-judgment interest, as provided by law.

Dkt. 271 at 2. Defendants challenged Plaintiffs' election to recover under both their common law and statutory fraud theories, arguing that Plaintiffs cannot choose multiple causes of action and combine them to maximize their damage award when both theories rely on the same economic loss and damage model presented at trial. Dkt. 281 at 2. Plaintiffs responded, arguing that "the jury awarded compensation and exemplary damages for two distinct injuries connected to two distinct contracts—(1) the [SPA] and (2) the [LOC]." Dkt. 288 at 1.

On September 28, 2022, the Court found that Plaintiffs did not satisfy their burden of showing they were entitled to recover under both legal theories. Dkt. 300 at 3. The Court therefore found that Plaintiffs were entitled to judgment under the theory that afforded them the greatest recovery: common law fraud. *Id.* The Court found that the common law fraud theory encompassed the greatest relief because it incorporated Plaintiffs' actual damages arising under both the SPA and the LOC, as well as exemplary damages awarded against Allen and Barrett. *Id.* at 7. Accordingly, that same day, the Court entered the Final Judgment (Dkt. 301) awarding Whiteside recovery of $518,000 from Allen and $156,250 from Barrett. Dkt. 301 at 1. The Court further directed Plaintiffs to file any motion for attorneys' fees in accordance with Federal Rule of Civil Procedure 54. *Id.*

On October 26, 2022, Whiteside concurrently filed the Motion for Attorney Fees (Dkt. 307) and the Motion to Amend (Dkt. 308). Dkts. 307–08. In the Motion to Amend (Dkt. 308), Whiteside seeks to "re-elect" his remedy and asks the Court to amend the Final Judgment (Dkt. 301), pursuant to Rule 59(e), to award recovery under the theory of statutory fraud. Dkt. 308 at 3. Whiteside argues that the theory of statutory fraud affords the greatest recovery so long as the Court sees fit to award at least $123,000 in attorney fees. *Id.* at 6. In the Motion for Attorney Fees (Dkt. 307), Whiteside seeks recovery of $769,248 in attorney fees. Dkt. 307 at 1.

3

On November 23, 2022, Defendants filed their response arguing that the Motion for Attorney Fees (Dkt. 307) "should be denied, or, alternatively, significantly reduced" because Whiteside did not submit sufficient evidence to support the reasonableness of the requested rates and hours. Dkt. 322 at 2.

On May 20, 2024, the Court ordered Whiteside to file supplemental briefing to "clearly explain how he calculated the requested attorney fees award of $769,248." Dkt. 359 at 3. Specifically, the Court ordered Whiteside to explain "the amounts that have been stricken through in the invoices and timekeeper records" and "the total amount of attorney fees requested from each of the invoices and timekeeper records." *Id.* Accordingly, on June 5, 2024, Whiteside filed his Supplemental Briefing per the Court's Order on Whiteside's Motion for Award of Attorneys' Fees (the "First Supplemental Brief") (Dkt. 360), wherein Whiteside clarified the stricken through entries and identified the total amount of fees requested from each of the invoices and timekeeper records attached to the Motion for Attorney Fees (Dkt. 307). *See* Dkt. 360. Whiteside further amended his requested attorney fees to $749,719 based upon the fee totals identified in the First Supplemental Brief (Dkt. 360). *Id.* at 2.

On June 7, 2024, the Court ordered Whiteside to file additional supplemental briefing because the information provided in the First Supplemental Brief (Dkt. 360) did not provide the Court "with the necessary information to calculate the lodestar" which is "the initial inquiry the Court must undertake in evaluating an attorney fee request." Dkt. 361 at 4. The Court further ordered Whiteside to clearly identify:

- Each attorney who worked on this matter;

- The hourly rate (or rates) for each attorney; and

- The number of hours expended for each attorney.

*Id.* at 4–5. Accordingly, on June 14, 2024, Whiteside filed his Second Supplemental Briefing per the Court's Order on Whiteside's Motion for Award of Attorneys' Fees (the "Second Supplemental Brief") (Dkt. 362) (together with the First Supplemental Brief (Dkt. 360), the "Supplemental Briefs") (Dkts. 360; 362), wherein Whiteside provided the requested information and attached exhibits to show how Whiteside calculated the lodestar. Dkts. 362; 361-1; 362-2.

On June 28, 2024, Defendants filed their response to the Supplemental Briefs (Dkts. 360; 362), wherein they argue the following:

> Whiteside's requests for attorneys' fees are still deficient and fails to meet the burden of establishing entitlement to its requested award of attorney's fees for the following reasons:
>
> A.    Whiteside failed to make proper disclosures and failed to produce documents regarding his expert on attorneys' fees.
>
> B.    Whiteside's Supplemental Briefing still fails to meet the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.
>
> C.    The evidence is still insufficient that the rates charged were reasonable.
>
> D.    Whiteside still has not provided evidence of the prevailing market rate with expert evidence based on similar cases and relies solely on his attorney's affidavit.
>
> E.    Defendants had no knowledge of the terms of Whiteside's "Flat Fee" arrangement.
>
> F.    Whiteside's calculations do not account for credits.
>
> G.    Whiteside's amount incurred or contracted for is not conclusive evidence of reasonableness or necessity of fees.
>
> H.    Whiteside's calculation should exclude hours expended for any excessive or unnecessary services.
>
> I.    Whiteside's redactions in the billing are unreasonable.
>
> J.    Whiteside has failed to segregate his recoverable and non-recoverable fees.

Dkt. 365 at 2.

## II.    LEGAL ANALYSIS

### A.    The Motion to Amend (Dkt. 308)

#### 1.    Rule 59 Legal Standard

Relief under Federal Rule of Civil Procedure 59(e) is appropriate when the movant shows: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). The Fifth Circuit has held that "such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). "Rather, Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (cleaned up) (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). A motion under Rule 59 cannot be used to raise arguments or claims "that could, and should, have been made before the judgment issued." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012) (quoting *Marseilles Homeowners Condo. Ass'n, Inc. v. Fidelity Nat'l Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008)).

#### 2.    Analysis

Whiteside seeks relief under Rule 59(e) and requests that the Court amend the Final Judgment (Dkt. 301) to award recovery under statutory fraud instead of common law fraud. *See* Dkt. 308. Defendants raise two primary arguments opposing the Court's reconsideration of the awarded remedy. First, Defendants argue that Whiteside is rehashing arguments that could have been raised before the entry of judgment because "Whiteside was fully aware that he could recover

attorneys' fees only on his claims for statutory fraud or breach of contract, and could have elected to recover based on either one of those claims instead of his common law fraud claim; he simply decided not to do so." Dkt. 321 at 3. However, Defendants' argument fails to recognize that Plaintiffs did seek to recover on their statutory fraud claim. In the Motion for Entry of Judgment (Dkt. 271), Plaintiffs sought to recover under both their statutory fraud and common law theories of recovery. *See* Dkts. 271 at 1–2; 288 at 3. Thus, the Motion to Amend (Dkt. 308) does not raise a new argument but clarifies that Whiteside's recovery under statutory fraud affords Whiteside the greatest recovery, which is permissible under Rule 59(e).

Second, Defendants argue that because the courts in *MCC Management of Naples, Inc. v. International Bancshares Corporation*, No. 06-1345, 2010 WL 11519662 (W.D. Okla. Dec. 9, 2010) and *Vanderbilt Mortgage and Finance, Inc. v. Flores*, No. 09-312, 2011 WL 2160928 (S.D. Tex. May 27, 2011) declined to reconsider the election of remedies post-judgment, the Court should not reconsider Whiteside's election of remedies in the instant case. *See* Dkt. 321 at 3–5. However, the cases cited by Defendants declined to reconsider the final judgment because the time to file a motion to amend the judgment under Rule 59(e) had passed. *See MCC Mgmt. of Naples, Inc.*, 2010 WL 11519662, at *1; *Vanderbilt Mortg. & Fin., Inc.*, 2011 WL 2160928, at *13. Here, the Motion to Amend (Dkt. 308) was timely filed pursuant to Rule 59(e). Thus, there is no timeliness issue, and the Court can consider Whiteside's request for reconsideration.

In the Motion to Amend (Dkt. 308), Whiteside argues that reconsideration and amendment of the Final Judgment (Dkt. 301) is appropriate here because the statutory fraud theory affords him "the highest available relief" when considered "in tandem with his separately requested attorneys' fees." Dkt. 308 at 2. The central question raised by the Motion to Amend (Dkt. 308) is whether the

Court properly determined which theory of recovery granted Plaintiff the greatest recovery when ruling on the Motion for Entry of Judgment (Dkt. 271). *See* Dkt. 300.

"Federal courts 'follow Texas substantive law on the election of remedies when it comes to state law claims.'" *Halprin v. Fed. Deposit Ins. Corp.*, No. 13-cv-1042, 2020 WL 4572929, at *8 (W.D. Tex. Aug. 7, 2020) (quoting *Aguilar v. Williamson County*, No. 11-ca-278, 2011 WL 13137682, at *3 n.3 (W.D. Tex. Dec 19, 2011)). Under Texas law, "[w]hen 'a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief.'" *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am. Inc.*, No. 08-cv-451, 2020 WL 1495230, at *4 (E.D. Tex. Mar. 27, 2020) (quoting *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988)). "The doctrine is designed to prevent a party who has obtained a specific form of remedy from obtaining a different and inconsistent remedy for the same wrong." *Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 541 (Tex. 1987). "An election of remedies does not occur unless a party having two or more inconsistent remedies pursues one of them to the exclusion of the others." *Id.* (citing *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980)). "[E]ven if a party fails to elect its remedy prior to judgment, courts applying Texas law must 'utilize the findings affording the greater recovery and render judgment accordingly.'" *Texas Advanced Optoelectronic Sols., Inc.*, 2020 WL 1495230, at *4 (quoting *Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1085 n.5 (5th Cir. 1996)). "The rule operates to prevent a plaintiff from recovering twice for the same wrong, not to prevent a plaintiff from recovering once." *Malvino v. Delluniversita*, 840 F.3d 223, 234 (5th Cir. 2016) (collecting cases).

Upon determining that Whiteside was not entitled to recover under both his statutory fraud and common law fraud theories, it was the Court's duty to determine which theory afforded

Whiteside the greatest recovery. *See Texas Advanced Optoelectronic Sols., Inc.*, 2020 WL 1495230, at *4. In the opinion granting the Motion for Entry of Judgment (Dkt. 271), the Court determined that the common law fraud theory granted the greatest recovery because "it encompasse[d] Plaintiffs' actual damages arising under both the SPA and the LOC, as well as exemplary damages awarded against Allen and Barrett." Dkt. 300 at 7. While this is true, Whiteside had not yet submitted his request for attorney fees and, thus, the Court did not discuss the effect of attorney fees on the determination of the greater recovery. Thus, the Court re-evaluates whether statutory fraud or common law fraud affords the greatest recovery.

Whiteside's recovery for common law fraud includes $425,000 in actual damages, $200,000 in exemplary damages from Allen, and $50,000 in exemplary damages, for a total recovery of $675,000. *See* Dkt. 259. However, common law fraud does not allow Whiteside to recover attorney fees.

Whiteside's recovery under statutory fraud includes $300,000 in actual damages, $237,000 in exemplary damages from Allen, and $15,000 in exemplary damages from Barrett, for a total recovery of $552,000. *See id.* While the actual and exemplary damages under the statutory fraud theory are less than the actual and exemplary damages under the common law fraud theory by $123,000, Whiteside is entitled to recover attorney fees under the statutory fraud claim but not the common law fraud claim. *Compare Biliouris v. Sundance Res., Inc.*, No. 07-cv-1591, 2010 WL 11515567, at *2 (N.D. Tex. Nov. 3, 2010) (finding attorney fees are recoverable for a statutory fraud claim), *aff'd*, 470 F. App'x 350 (5th Cir. 2012), *with Vanderbilt Mortg. & Fin., Inc.*, 2011 WL 2160928, at *14 (finding attorney fees are not recoverable for a common law fraud claim). Hence, if Whiteside's attorney fees are greater than $123,000, the statutory fraud theory affords him the greater relief. *Town E. Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 812 (Tex. App.—Dallas

1987, no pet.) (holding that a court may consider attorney fees and costs in determining which cause of action affords the plaintiff greater relief). The Court considers the Motion for Attorney Fees (Dkt. 307) below and finds that Whiteside is entitled to recover $604,624.40 in attorney fees. *See infra* Section II.B.3. Thus, Whiteside's statutory fraud theory affords him the greatest recovery. *See Gray*, 730 S.W.2d at 812 (holding that although the actual and exemplary damages for the plaintiff's Deceptive Trade Practices Act ("DTPA") claim was less than the actual and exemplary damages for his common law fraud claim, the DTPA claim afforded the greater relief because the consideration of attorney fees resulted in a greater total recovery under the DTPA than common law fraud).

Whiteside's intent to seek recovery of attorney fees has been well established throughout the litigation. *See* Dkts. 1 at 11; 70 at 15; 254 at 12; 271 at 2. Nevertheless, the Court did not consider the effect of attorney fees when originally determining which theory afforded the best recovery. *See* Dkt. 300 at 5–7. Thus, the Court erred in granting recovery on common law fraud rather than statutory fraud. Accordingly, the Court finds it proper to amend the Final Judgment (Dkt. 301) to award recovery pursuant to Whiteside's statutory fraud claim.

**B.    The Motion for Attorney Fees (Dkt. 307)**

Texas Business and Commerce Code § 27.01(e) provides that "[a]ny person who violates the provisions of this section shall be liable to the person defrauded for reasonable and necessary attorney's fees." TEX. BUS. & COM. CODE ANN. § 27.01(e); *see Biliouris*, 2010 WL 11515567, at *2. "State law controls both the award of and the reasonableness of fees where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law, one method of calculating reasonable attorney fees is the "lodestar" method. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 494–96 (Tex. 2019). "The lodestar

10

method provides . . . a focused and objective analysis of whether the fees sought are reasonable and necessary . . . and is thus presumptively reasonable." *Id.* at 496. The Texas Supreme Court has explained the calculation of the lodestar as follows:

> [T]he fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts. Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. This base lodestar figure should approximate the reasonable value of legal services provided in prosecuting or defending the prevailing party's claim through the litigation process. And the lodestar calculation should produce an objective figure that approximates the fee that the attorney would have received had he or she properly billed a paying client by the hour in a similar case. This readily administrable and objectively reasonable calculation is the standard for calculating the reasonableness and necessity of attorney's fees in a fee-shifting situation.

*Id.* at 498 (citations omitted).

### 1.      Reasonable Hourly Rates

Reasonable hourly rates are determined by referring to the attorneys' regular rates as well as prevailing market rate in the community in which the district court sits. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995); *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011); *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The burden is on the fee applicant to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted).

Here, Whiteside argues that "[t]he rates charged by [his] counsel were commensurate with the timekeepers' education, skills, and experience, and they were comparable to rates charged by

other professionals practicing in the Eastern District of Texas and North Texas." Dkt. 307 at 4–5. Whiteside seeks to recover fees for seven attorneys who worked on this matter. *Id.* at 3–4. Because the litigation lasted over a period of years, Whiteside seeks to recover different rates for these attorneys as reflected in the table below:

| Attorney | Date Range | Hourly Rate |
|---|---|---|
| Casey Griffith (Partner) | 2017–2019 | $450 |
| | 2020 | $500 |
| | January–November 2021 | $535 |
| | November–December 2021 | $550 |
| | 2022 | $575 |
| Michael Barbee (Partner) | 2017–2018 | $325 |
| | November 2021 | $450 |
| | December 2021 | $435 |
| Maeghan Whitehead (Partner) | 2019 | $375 |
| | 2020 | $400 |
| | January–November 2021 | $425 |
| | November–December 2021 | $410 |
| | 2022 | $450 |
| Kirk Voss (Partner) | 2021 | $425 |
| Dallas Flick (Associate) | 2019 | $290 |
| | 2020 | $315 |
| | January–November 2021 | $325 |
| | November–December 2021 | $305 |
| | 2022 | $350 |
| Gracen Daniel (Associate) | 2021 | $315 |
| Ryan Funderburg (Associate) | 2019 | $295 |

*See* Dkts. 307 at 3–4; 362 at 2–4; 362-2.

In support of the requested rates, Whiteside submitted the Declaration of Casey Griffith (the "Declaration") and a copy of Casey Griffith's ("Griffith") curriculum vitae, which show that Griffith is an experienced and skilled litigator who is qualified to opine on prevailing market rates. *See* Dkts. 307-1–307-2. Defendants argue that the Declaration alone is not sufficient evidence that the requested rates are reasonable. Dkt. 322 at 4–7. "Although affidavits of attorneys who did not bill on the matter are 'generally' used to establish the reasonable hourly rate, this is not a requirement." *Crane v. Rave Rest. Grp., Inc.*, No. 20-cv-13, 2022 WL 403291, at *5 (E.D. Tex. Feb. 9, 2022) (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 491 (5th Cir. 2012)), *vacated on other grounds*, No. 21-40880, 2023 WL 3735567 (5th Cir. May 31, 2023). In the Declaration, Griffith provides the law school and year of graduation for each attorney included in the fee request. Dkt. 307-1 at 2–3. Further, Griffith attests that "[t]he legal professionals of Harper Bates and Griffith Barbee with whom [he] worked in providing services to Whiteside have been at all relevant times attorneys licensed in the State of Texas, in good standing, and experienced in commercial litigation practice." *Id.* at 3. This background information is sufficient to support the rates requested above.[1] *See Crane*, 2022 WL 403291, at *5 (finding the declaration of the lead partner was sufficient evidence of the prevailing market rate when it provided details regarding the amount of time each attorney who worked on the case had been licensed in the state of Texas). *Contra Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 987 (S.D. Tex. 1997) (finding the evidence insufficient where no background information was provided for attorneys whose fees were included in the request for attorney fees).

---

[1] Defendants take issue with the inclusion of four other individuals for whom no background information was submitted. *See* Dkt. 322 at 7. However, these individuals are not included in the lodestar calculation that Whiteside seeks to recover. *See* Dkt. 362 at 2–4. Thus, any fees associated with these individuals are correctly excluded from the lodestar calculation.

Having found that there is sufficient evidence to support the request, the Court must now determine whether the rate requested is reasonable. "Rates are reasonable when they 'are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Merge Off. Interiors, Inc. v. Alfa Adhesives, Inc.*, No. 19-cv-336, 2020 WL 2115645, at *2 (N.D. Tex. May 3, 2020) (quoting *Blum*, 465 U.S. at 895 n.11). "It is well-established that the Court may use its own expertise and judgment to independently assess the hourly rates charged for attorney's fees." *Id.* (citing *SortiumUSA, LLC v. Hunger*, No. 11-cv-1656, 2015 WL 179025, at *5 (N.D. Tex. Jan. 14, 2015)). Here, after considering the years of experience and the nature of this case, the Court finds that the requested rates are consistent with the prevailing market rates in this legal community.[2] *See Crane*, 2022 WL 403291, at *4–5 (finding rates ranging from $385 to $425 for associates and $600 to $925 for partners reasonable in a case involving claims of breach of contract, fraudulent inducement, statutory fraud, and declaratory judgment); *Solferini*, 2021 WL 5415293, at *5 (finding a rate of $475 appropriate for an associate and a range of $585 to $650 appropriate for partners); *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 907 (E.D. Tex. 2017) (finding rates of $450 and $631 reasonable for associates and $600 and $860 reasonable for partners).

### 2.     Reasonable Hours Expended

The Court next determines whether the number of hours expended by Whiteside's counsel were reasonable. The party seeking attorney fees bears the burden of documenting and supporting the reasonableness of all time expenditures for which compensation is sought. *Hensley*, 461 U.S. at 437. The attorney for the prevailing party "should make a good faith effort to exclude from a

---

[2] Courts in the Sherman Division refer to rates in the Dallas-Fort Worth legal market when determining the reasonableness of rates. *See Crane*, 2022 WL 403291, at *5 n.5; *Solferini as Tr. of Corradi S.p.A. v. Corradi USA, Inc.*, No. 18-cv-293, 2021 WL 5415293, at *5 (E.D. Tex. Nov. 19, 2021) (collecting cases).

fee request hours that are excessive, redundant, and otherwise unnecessary." *Id.* at 434. In determining whether the hours expended are reasonable, "the Court can draw from its own experience as a lawyer and a judge." *See Branch Banking & Tr. Co. v. Re Rez L.P.*, No. 19-cv-630, 2021 WL 863766, at *11 (E.D. Tex. Jan. 8, 2021), *R. & R. adopted*, 2021 WL 857937 (E.D. Tex. Mar. 5, 2021) (citing *Sharif v. Wellness Int'l Network*, *Ltd.*, No. 05-cv-1367, 2008 WL 2885186, at *2 (N.D. Tex. July 22, 2008)). "To determine the reasonable number of hours expended on litigation, the Court must determine 'whether the total number of hours claimed were reasonable and whether specific hours claimed were reasonably expended.'" *Franciscan All., Inc. v. Becerra*, 681 F. Supp. 3d 631, 637 (N.D. Tex. 2023) (quoting *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997)). "The court must eliminate excessive or duplicative time." *Id.* (citing *Roscoe Indep. Sch. Dist.*, 119 F.3d at 1232).

Here, Whiteside seeks compensation for 2,036.1 hours, with each attorney billing the following total hours:

| Attorney | Hours |
|---|---|
| Casey Griffith (Partner) | 281.4 |
| Michael Barbee (Partner) | 248 |
| Maeghan Whitehead (Partner) | 581.9 |
| Kirk Voss (Partner) | 51.2 |
| Dallas Flick (Associate) | 690.2 |
| Gracen Daniel (Associate) | 139.3 |
| Ryan Funderburg (Associate) | 44.1 |

*See* Dkt. 362-1 at 2. In support of the requested hours, Whiteside submitted extensive billing records and explained generally that the subject matter of his counsel's representation included, but was not limited to, the following:

- Review and analysis of the underlying agreements and materials that informed Whiteside's claims.

- Preparing and filing Whiteside's pleadings.

- Conducting legal research in support of Whiteside's claims and defenses.

- Preparing for and attending mediation.

- Discovery practice, including propounding and responding to written discovery, preparing for, taking, and defending party and non-party depositions, and reviewing documents and materials produced by Defendants relevant to the parties' claims and defenses.

- Investigating patent-related representations made by Defendants prior to consummation of the underlying agreements.

- Dispositive motion practice, including responding to and arguing against Defendants' Motion for Summary Judgment.

- Preparing for and attending trial.

- Preparing and responding to post-trial briefing, including the present fee application.

Dkt. 307-1 at 3–4; *see also* Dkts. 307-2–307-6; 360-1; 362-1–362-2.

Defendants argue that Whiteside's evidence of the hours reasonably expended is insufficient because (1) Whiteside's counsel has not exercised proper billing judgment; (2) the billing entries are block billed and extensively redacted; and (3) Whiteside's counsel has not properly segregated recoverable fees from non-recoverable fees.[3] *See* Dkts. 322; 365.

---

[3] Defendants raise two additional arguments in opposition in their response to the Supplemental Briefs (Dkts. 360; 362): Whiteside failed to properly disclose (1) his expert on attorney fees and (2) the flat fee arrangement. *See* Dkt. 365 at 3–4; 8–10. Defendants first argument is unfounded because Whiteside did disclose that Griffith would act as an expert on attorney fees. Dkt. 365-1 at 1. Second, Defendants do not point to any law that requires the disclosure of a flat fee arrangement and the Court can find none. *See* Dkt. 365 at 8–10. Further, Whiteside seeks to recover the reasonable and necessary attorney fees incurred in this case, as demonstrated by the lodestar calculation. The reasonableness and necessity of attorney fees is "not dependent solely on the contractual fee arrangement between the prevailing party and its attorney." *Rohrmoos*, 578 S.W.3d at 498 (collecting cases). Thus, Defendants argument that Whiteside failed to properly disclose the flat fee arrangement also fails.

i.      **Billing Judgment**

The party seeking fees has "the burden of showing . . . that the attorneys exercised billing judgment." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)); *see also El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762–63 (Tex. 2012). Billing judgment is defined as "documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799 (citations omitted). Any "excessive, duplicative, or inadequately documented time should be eliminated from an attorney's fee award." *Montano v. Orange County*, No. 13-cv-611, 2015 WL 11110631, at *4 (E.D. Tex. Apr. 24, 2015) (cleaned up) (quoting *Leonard v. Louisiana*, No. 07-813, 2013 WL 3558291, at *3 (W.D. La. July 10, 2013)); *see also El Apple*, 370 S.W.3d at 762–63. "The hours surviving this vetting process are those reasonably expended on the litigation." *Montano*, 2015 WL 11110631, at *4 (quoting *Leonard*, 2013 WL 3558291, at *3) (internal quotation marks omitted); *see also El Apple*, 370 S.W.3d at 762–63.

Whiteside's counsel represents that prior to calculating the lodestar, he removed extraneous and unnecessary services from the calculation of the lodestar. *See* Dkt. 307-1 at 5. Further, the Court has been able to evaluate this billing judgment because the exhibits supporting the attorney fees request include the time written off as represented by stricken through entries. *See* Dkts. 307-2–307-6; 360. Defendants generally assert that because, at times, more than one attorney worked on the same task, the work was duplicative. Dkt. 322-1 at 5. "When more than one attorney works on a case, the court may consider if the work by other attorneys was duplicative or unnecessary." *Coe v. Chesapeake Expl., LLC*, No. 09-cv-290, 2011 WL 4356728, at *4 (E.D. Tex. Sept. 15, 2011) (citing *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 552 (5th Cir. 1987)). Defendants have not identified any specific examples of multiple attorneys working on a singular task for the

Court's consideration of whether the work was duplicative. *See id.*; *see also KeyCorp v. Holland*, No. 16-cv-1948, 2017 WL 606617, at *7 (N.D. Tex. Feb. 15, 2017) ("[I]f a party does not object to particular billing entries as inadequately documented, the court is not obligated *sua sponte* to sift through fee records searching for vague entries or block billing. It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention." (quoting *Hoffman v. L & M Arts*, No. 10-cv-953, 2015 WL 3999171, at *5 (N.D. Tex. July 1, 2015))). After reviewing Whiteside's exhibits, the Court concludes no reduction is necessary for duplicative billing.

Defendants also generally assert that multiple attorneys "repeatedly bill[ed] in excess[] of twelve hours on any given day." Dkt. 322-1 at 5–6. However, Defendants argument fails to acknowledge the reason the attorney was billing over twelve hours in a day. As pointed out by Whiteside, these entries relate to services that reasonably may take more than twelve hours to complete, including responding to Defendants' dispositive motions; traveling to, preparing for, and taking party depositions; and preparing for and conducting trial. *See* Dkt. 326 at 4. Given the nature of the work performed when the attorneys billed over twelve hours in a single day, the Court does not find that such entries are excessive. Thus, the Court will not apply a reduction for lack of billing judgment.

### ii.   Block Billing

"Block billing" refers to a "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996); *see also Hollowell v. Orleans Reg'l Hosp., LLC*, 217 F. 3d 379, 392 n.18 (5th Cir. 2000); *Barrow v. Greenville Indep. Sch. Dist.*, No. 00-cv-913, 2005 WL 6789456, at *3 (N.D. Tex.

Dec. 20, 2005). "Block billing is disfavored because it prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended." *Hoffman*, 2015 WL 3999171, at *4 n.5 (citing *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 09-cv-752, 2011 WL 487754, at *4 (N.D. Tex. Aug. 20, 2010)). When making a reduction because of block billing, courts in the Fifth Circuit generally reduce a percentage of the hours or the lodestar figure, and this amount usually ranges from 10% to 30%. *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, No. 09-cv-1596, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010) (collecting cases).

Upon reviewing the exhibits submitted by Whiteside, the Court finds that the use of block billing in this case warrants a reduction in the fee award. Whenever Whiteside's counsel performed multiple tasks in a single day, they lumped together all the tasks into a single entry with the total number of hours spent working on this case for the day. *See, e.g.*, Dkts. 307-3 at 9, 13; 307-4 at 2, 4; 307-5 at 2, 4, 14. Lumping together tasks in such a manner makes it difficult for the Court to determine "whether, for any particular task, the number of hours spent and claimed was reasonable." *Fralick*, 2011 WL 487754, at *5. However, the Court recognizes that the descriptions accompanying the block billed entries are detailed. Accordingly, the Court concludes that a reduction on the low-end of the range of 10% is appropriate here. *See Thermotek, Inc. v. Orthoflex, Inc.*, No. 10-cv-2618, 2016 WL 6330429, at *11 (N.D. Tex. Oct. 27, 2016) (applying "a threshold reduction of 10% to account for entries that do constitute block billing"); *Franciscan All.*, 681 F. Supp. 3d at 642 (applying a 5% reduction due to block billing); *Bobby Goldstein Prods., Inc. v. Habeeb*, No. 21-cv-1924, 2023 WL 8790284, at *5 (N.D. Tex. Nov. 27, 2023) (applying a 10% reduction to account for entries that constitute block billing, vague entries, and duplicative entries), *R. & R. adopted*, 2023 WL 8791178.

### iii.    Excessive Redaction

"[R]edaction is acceptable as long as the Court can meaningfully review the fee request."

*Tech Pharmacy Servs.*, 298 F. Supp. 3d at 902 (first citing *Long v. Griffin*, 442 S.W.3d 253, 255

(Tex. 2014); and then citing *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex.

2009)). To do so, the evidence must, at a minimum, include "the services performed, who

performed them and at what hourly rate, when they were performed, and how much time the work

required." *Long*, 442 S.W.3d at 255 (quoting *El Apple*, 370 S.W.3d at 764). Redacted entries

should be excluded if they do "not provide sufficient information to classify and evaluate the

activities and hours expended." *Tech Pharmacy Servs.*, 298 F. Supp. 3d at 902 (quoting *Randolph*,

634 F. Supp. 2d at 800) (internal quotation marks omitted).

Here, the redactions in the supporting exhibits prohibit the Court's ability to conduct a

meaningful review. Whiteside contends that the descriptions are redacted to exclude only the

subject matter of the activities where it is necessary to maintain attorney-client and work-product

privileges. Dkt. 326 at 5. While this may be true, the redacted entries must be excluded from the

calculation of the lodestar if they do not provide sufficient information to classify and evaluate the

activities and hours expended. The redacted entries in this case fall into this category. For example,

an entry for Mr. Barbee totaling 0.6 hours on August 29, 2017, is described as "Discussions with

C. Griffith re: [redacted]." Dkt. 307-3 at 9. While Whiteside is correct that redaction is acceptable

for the purpose of removing privileged information, the redaction is so substantial here that even

the most general level of the subject of the discussion has been removed from the description. *See*

*Brant Oilfield Mgmt. & Sales, Inc. v. Mountwest, Inc.*, No. 14-15-240-cv, 2016 WL 3574669, at *5

(Tex. App.—Houston [14th Dist.] June 30, 2016, no pet.) (mem. op.) (finding no legally sufficient

evidence supported the redacted entries because "[a]lthough the statements identified the case, the

20

billing attorney, the dates, the number of hours, and the billing rates, they did not provide the required specificity as to the nature of the tasks performed by each attorney" (footnote omitted)). Thus, the Court cannot determine whether the time expended having this discussion was reasonable in litigating this case. There are numerous entries that are similarly redacted throughout the billing records submitted by Whiteside. *See, e.g.*, Dkts. 307-3–307-6. Accordingly, the Court finds that a 10% reduction to the lodestar is appropriate to account for the redacted entries. *See Thermotek*, 2016 WL 6330429, at *11 (applying a 10% reduction for overly redacted entries and a lack of billing judgment).

### iv.    Segregation of Fees

"A party seeking attorneys' fees is 'required to segregate fees between claims for which they are recoverable and claims for which they are not.'" *Domain Prot., LLC v. Sea Wasp, LLC*, No. 18-cv-792, 2020 WL 4583464, at *7 (E.D. Tex. Aug. 10, 2020) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006)). However, there is an exception to the duty to segregate when the fees are inextricably intertwined. *Tony Gullo Motors*, 212 S.W.3d at 313–14. "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.*

Here, Whiteside has not segregated his fees between recoverable and unrecoverable claims. Whiteside argues that "[t]he same work performed through initial pleadings, discovery, dispositive motion briefing, and trial was necessary to assert the statutory fraud claim and the remaining claims, as well as to rebuke Defendant's affirmative defenses." Dkt. 307 at 5. Moreover, Whiteside's counsel represents that he removed a select number of line items consistent with the duty to segregate before submitting the instant request to the Court. *See id.* at 6 n.24; Dkt. 307-1

at 5. Defendants oppose Whiteside's non-segregation of fees by generally asserting that Whiteside has failed to submit any evidence supporting his assertion that the claims are inextricably intertwined. Dkt. 322 at 13. However, it is clear from the record that there was significant overlap between the elements and facts of all of the claims asserted by Whiteside. Indeed, the claims contain such significant overlap that upon Whiteside receiving a favorable jury finding as to each of the claims asserted at trial, the Court limited Plaintiffs' recovery to one claim because the claims were not "separate and distinct." *See* Dkt. 300 at 7. Moreover, the services included in the request include drafting the complaint and amended complaints, discovery, researching and drafting dispositive motion briefing, preparing for trial, and communicating with the client and opposing parties. These services would be necessary whether the statutory fraud claim was filed alone or with the other claims and thus, "they are not disallowed simply because they do double service." *See United My Funds, LLC v. Perera*, No. 19-cv-373, 2020 WL 10708754, at *4 (E.D. Tex. Dec. 18, 2020) (quoting *ATOM Instrument Corp. v. Petroleum Analyzer Co., L.P.*, 969 F.3d 210, 217 (5th Cir. 2020), *as revised* (Sept. 17, 2020)). Accordingly, the Court finds Whiteside has met his burden in showing that no further segregation is necessary or practical.

### 3.  Calculation of the Lodestar

The lodestar calculation, before the reduction for redaction and block billing, is calculated as follows:

| Attorney | Hourly Rate | Sum of Hours | Sum of Fees |
|---|---|---|---|
| Casey Griffith (Partner) | $450 | 102.6 | $46,170.00 |
| | $500 | 66.0 | $33,000.00 |
| | $535 | 90.9 | $48,631.50 |
| | $550 | 5.2 | $2,860.00 |
| | $575 | 16.7 | $9,602.50 |
| **Total** | | **281.4** | **$140,264.00** |

| | | | |
|---|---|---|---|
| Michael Barbee (Partner) | $325 | 293.3 | $77,772.50 |
| | $435 | 2.2 | $957.00 |
| | $450 | 6.5 | $2,925.00 |
| **Total** | | **248.0** | **$81,654.50** |
| Maeghan Whitehead (Partner) | $375 | 100.0 | $37,500.00 |
| | $400 | 216.6 | $86,640.00 |
| | $410 | 0.8 | $328.00 |
| | $425 | 209.0 | $88,825.00 |
| | $450 | 55.5 | $24,975.00 |
| **Total** | | **581.9** | **$238,268.00** |
| Kirk Voss (Partner) | $425 | 51.2 | $21,760.00 |
| **Total** | | **51.2** | **$21,760.00** |
| Dallas Flick (Associate) | $290 | 150.4 | $43,616.00 |
| | $305 | 14.0 | $4,270.00 |
| | $315 | 252.1 | $79,411.50 |
| | $325 | 245.9 | $79,917.50 |
| | $350 | 27.8 | $9,730.00 |
| **Total** | | **690.2** | **$216,945.00** |
| Gracen Daniel (Associate) | $315 | 139.3 | $43,879.50 |
| **Total** | | **139.3** | **$43,879.50** |
| Ryan Funderburg (Associate) | $295 | 44.1 | $13,009.50 |
| **Total** | | **44.1** | **$13,009.50** |
| **Grand Total** | | **2,036.1** | **$755,780.50** |

*See* Dkts. 362-1–362-2.

The above grand total is reduced by 20% to account for the block billed entries and the overly redacted entries, resulting in a final lodestar figure of $604,624.40.

### 4.      Adjustments to the Lodestar

The lodestar figure "is presumptively reasonable and should be modified only in exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). However, courts may "decrease or enhance the amount based on the relative weight of the so-called '*Johnson factors*.'" *Griffin v. O'Brien, Wexler, & Assocs., LLC*, 680 F. Supp. 3d 772, 788 (E.D. Tex. 2023) (quoting *Fessler v. Porcelana Corona de Mex., S.A. DE C.V.*, 23 F.4th 408, 415–16 (5th Cir. 2022)). These factors are:

> (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Tech Pharmacy Servs., LLC*, 298 F. Supp. 3d at 898 (citation omitted).

Whiteside does not seek a modification of the lodestar calculation based on the *Johnson* factors. Dkt. 307 at 6. After considering each *Johnson* factor, the Court agrees with Whiteside and finds no reason to adjust the lodestar upwards or downwards. *See Jackson v. Mistry Hosp. LLC*, No. 19-cv-422, 2021 WL 1392869, at *2 (E.D. Tex. Apr. 12, 2021) (citing *Johnson*, 488 F.2d at 717–19).

### III.      CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion to Amend (Dkt. 308) and **GRANTS IN PART** and **DENIES IN PART** the Motion for Attorney Fees (Dkt. 307). The Court will enter an amended final judgment for Whiteside as follows: actual damages of $225,000 awarded against Allen; actual damages of $75,000 awarded against Barrett; exemplary damages of $237,000 awarded against Allen; exemplary damages of $15,000 awarded against Barrett; and

attorney fees of $604,624.40. The Court will enter an amended final judgment in a separate document.

**So ORDERED and SIGNED this 14th day of August, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE