**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| BRIAN WHITESIDE and AUTOFICIO, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No.        4:17-cv-00404-KPJ |
| | § | |
| CIMBLE CORP., ALVIN ALLEN and | § | |
| PAUL BARRETT, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MOTION ALTER OR AMEND THE JUDGMENT OR, IN THE
ALTERNATIVE, FOR A NEW TRIAL, AND BRIEF IN SUPPORT (FED. R.
CIV. P. 59)**

Defendants, Cimble Corp. ("Cimble"), Alvin Allen ("Allen"), and Paul Barrett ("Barrett")

(collectively, "Defendants), file this Motion and moves for an order altering or amending the

judgment in this action (FED. R. CIV. P. 59(e)) or, in the alternative, for a new trial (FED. R. CIV.

P. 59(a)).

i

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION .............................................................................................................. 1

LAW APPLICABLE TO THE MOTION .......................................................................... 3

    A.   It is Within the Court's Discretion to Order a New Trial ................................... 3

    B.   Alternatively, the Court May Amend the Judgment to Prevent Clear Error and  Manifest Injustice........................................................................................... 4

Argument & Authorities ................................................................................................... 5

    A.   The Jury's Fraud and Negligant Misrepresentation Findings are Against the Great Weight of  the Evidence. ............................................................................. 5

    B.   The Great Weight of the Evidence Does not Support a Finding of Justifiable Reliance..... 6

    C.   Whiteside is Equitably Estopped from Recovering on his Fraud Claims........................... 9

    D.   Jury's Award of Fraud and other Damages Against the Great Weight of the Evidence ..... 9

    E.   The Exemplary Damages Award is Not Supported by a Preponderance of the  Evidence or Clear and Convincing Evidence, and is Based on Manifest Legal and  Factual Errors. ... 11

    F.   The Jury's Breach of Contract Findings are Against the Great Weight of the Evidence .. 12

    G.   The Court Erred in Excluding Relevant Evidence............................................. 12

    I.   The Jury's Paradoxical Verdict Merits a New Trial ....................................... 14

PRAYER........................................................................................................................... 15

CERTIFICATE OF SERVICE ....................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Affordable Power, L.P. v. Buckeye Ventures, Inc.*,
    347 S.W.3d 825 (Tex. App.—Dallas 2011, no pet. ................................................... 19

*Allied Chem. Corp. v. Daiflon, Inc.*,
    449 U.S. 33, 101 S. Ct. 188, 66 L. Ed. 2d (1980) .................................................... 14

*Anderson v. Durant*,
    550 S.W.3d 605 (Tex. 2018) .......................................................................... 7, 21

*Angell v. Culpepper*,
    No. 03-19-00778-CV, 2021 Tex. App. LEXIS 8767 2021 WL 5018758 (Tex. App.—Austin
    Oct. 29, 2021, no pet.) ................................................................................. 19

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*,
    590 S.W.3d 471 (Tex. 2019) ........................................................................ 17, 18

*Bazile v. Bisso Marine Co.*,
    606 F.2d 101 (5th Cir. 1980) ........................................................................... 15

*Bellows v. Amoco Oil Co.*,
    118 F.3d 268 (5th Cir. 1997) ........................................................................ 23, 24

*Bush v. Texaco, Inc.*,
    504 F.Supp. 670 (E.D. Tex. 1981) ..................................................................... 15

*Carney v. Adams*,
    141 S. Ct. 493, 208 L. Ed. 2d 305 (2020) .............................................................. 23

*Cates v. Creamer*,
    431 F.3d 456 (5th Cir. 2005) ........................................................................... 14

*Cerullo v. Gotlieb*,
    309 S.W.3d 160 (Tex. App.—Dallas 2010, pet. denied) ............................................... 22

*Chico Auto Parts & Serv. v. Crockett*,
    512 S.W.3d 560(Tex. App.—El Paso 2017, pet. denied) .............................................. 17

*Crane v. Johnson*,
    783 F.3d 244 (5th Cir 2015) ........................................................................... 23

*Del Rio Distrib., Inc. v. Adolph Coors Co.*,
    589 F.2d 176 (5th Cir. 1979) ........................................................................... 14

*Dover Corp. v. Perez*,
    587 S.W.2d 761 (Tex. App.—Corpus Christi 1979, writ ref'd n.r.e.) ................................... 29

*Draper v. Airco, Inc.*,
    580 F.2d 91 (3d Cir. 1978) ............................................................................ 29

*Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*,
    6 F.3d 350 (5th Cir. 1993) ............................................................................. 16

*Ensley v. Cody Res., Inc.*,
    171 F.3d 315 (5th Cir. 1999) ........................................................................... 22

*Fed. Express Corp. v. Dutschmann*,
    846 S.W.2d 282 (Tex. 1993) (per curiam) .............................................................. 22

*Franklin Bank, S.S.B. v. Barnes (In re Barnes)*,
  369 B.R. 298 (Bankr. W.D. Tex. 2007). ................................................................ 21
*Gasperini v. Ctr. for Humanities*,
  518 U.S. 415, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996) ...................................... 14
*Goodgame v. Am. Cast Iron Pipe Co.*,
  75 F.3d 1516 (11th Cir. 1996)................................................................................. 14
*Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913 (Tex. 2010) ................... 17
*Gray v. Bicknell*,
  86 F.3d 1472 (8th Cir. 1996)................................................................................... 14
*Hampton v. Magnolia Towing Co.*, 3
  38 F.2d 303 (5th Cir. 1964)..................................................................................... 15
*Hoechst Celanese Corp. v. Arthur Bros., Inc.*,
  882 S.W.2d 917 (Tex. App.—Corpus Christi 1994, writ denied)...........................22
*HSBC Bank USA, N.A. v. Crum*,
  90 F.3d 199 (5th Cir. 2018)..................................................................................... 23
*Johnson v. Ford Motor Co.*,
  988 F.2d 573 (5th Cir. 1993)................................................................................... 13
*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*,
  546 S.W.3d 648 (Tex. 2018)............................................................................. 17, 18
*L & F Homes & Dev., L.L.C. v. City of Gulfport*,
  538 F. App'x 395 (5th Cir. 2013) ...................................................................... 23, 24
*Lama v. Borras*,
  16 F.3d 473 (1st Cir. 1994) ..................................................................................... 14
*Laxton v. Gap, Inc.*,
  333 F.3d 572 (5th Cir. 2003)................................................................................... 14
*Lewis v. Bank of Am. NA*,
  343 F.3d 540 (5th Cir. 2003)................................................................................... 19
*Lind v. Schenley Indus., Inc.*,
  278 F.2d 79 (3d Cir. 1964)...................................................................................... 15
*Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*,
  630 F.2d 250 (5th Cir. 1980)............................................................................. 25, 26
*Mercedes-Benz USA, LLC v. Carduco, Inc.*,
  583 S.W.3d 553 (Tex. 2019) ..................................................................................... 8
*Nelson v. McCall Motors, Inc.*,
  630 S.W.3d 141 (Tex. App.—Eastland 2020, no pet.) ............................................. 8
*Procter v. RMC Capital Corp.*,
  47 S.W.3d 828 (Tex. App.—Beaumont 2001, no pet.).............................................. 6
*Pryor v. Trane Co.*,
  138 F.3d 1024 (5th Cir. 1989).................................................................................... 3
*Sawyer v. E.I. Du Pont De Nemours & Co.*,
  430 S.W.3d 396 (Tex. 2014) ..................................................................................... 6
*Shelly v. Lemaire*,
  184 F.3d 481 (5th Cir. 1999)...................................................................................... 4

*Smith v. Transworld Drilling Co.*,
    773 F.2d 610 (5th Cir. 1985) ........................................................................ 3

*Spoljaric v. Percival Tours, Inc.*,
    708 S.W.2d 432 (Tex. 1986) ........................................................................ 11

*T.O. Stanley Boot Co. v. Bank of El Paso*,
    847 S.W.2d 218 (Tex. 1992) ........................................................................ 11

*Templet v. HydroChem Inc.*,
    367 F.3d 473 (5th Cir. 2004) ........................................................................ 4

*Thigpen v. Locke*,
    363 S.W.2d 247 (Tex. 1962) ........................................................................ 7

*Tony Gullo Motors I, L.P. v. Chapa*,
    212 S.W.3d 299 (Tex. 2006) ........................................................................ 11

*Transtexas Gas Corp.*,
    303 F.3d 571 (5th Cir. 2002) ........................................................................ 4

*Twin City Fire Ins. Co. v. Davis*,
    904 S.W.2d 663 (Tex. 1995) ........................................................................ 11

*UMLIC VP LLC v. T&M Sales & Envtl. Sys.*,
    176 S.W.3d 595 (Tex. App.—Corpus Christi 2005, pet. denied) ........................ 15

*Waltman v. Int'l Paper Co.*,
    875 F.2d 468 (5th Cir. 1989) ........................................................................ 5

**Statutes**

FED. R. EVID. 401 ............................................................................................ 13

TEX. CIV. PRAC. & REM. CODE § 41.003(a) .................................................... 11

## INTRODUCTION

On September 28, 2022, this Court signed its Final Judgment. [Dtk. 301]. On August 14, 2024, this Court entered its Memorandum Opinion and Order [Dkt. 367] and its Amended Final Judgment in this matter. [Dkt. 368].  The Court entered judgment in the amount of $225,000 in actual damages and $237,000 in exemplary damages against Alvin Allen and actual damages of $75,000 and exemplary damages of $15,000 against Paul Barret. The Court also entered an award of attorney's fees against "Defendants." Therefore, this Motion is being timely filed as to the Memorandum Opinion and Order [Dkt 367] and Amended Final Judgment [Dkt 368].

Plaintiffs' counsel artfully used the complex legal and financial facts of this case to persuade the jury to award Plaintiff Brian Whiteside ("Whiteside") fraud damages against Allen and Barrett plus exemplary damages [*See* Dkt. 259 at pp. 1-6]; and to award Whiteside and Plaintiff Autoficio, LLC ("Autoficio") breach of contract damages totaling $425,000. [Dkt. 259 at p. 7].

The great weight of the evidence, however, vitiates a finding of any fraud and, correspondingly, fraud damages.

Plaintiffs then filed a motion to reconsider its Election of Remedies and the Court entered judgment based on statutory fraud and awarded attorney's fees. [Dkt. 367 and 368].

First, the great weight of the evidence fails to support a finding that Whiteside's reliance on Defendant's representations was justifiable under the circumstances because (1) Whiteside is admittedly an experienced investor [Dkt. 274 111 ("Mr. Whiteside is an investor. He's an experienced investor. He's invested before in other things.")], (2) the transaction was an arm's-length transaction, and (3) Whiteside failed to take steps to protect his interests, when he had a duty to do so. In this regard, most apparently, Whiteside testified multiple times (including in response to written juror questions allowed by the Court) that he chose to proceed with the

1

transaction even after he did not receive all of the financial and other information he requested from Defendants to conduct due diligence (information that he could have discovered had he conducted his own cursory examination or investigation into Cimble's financial history and intellectual property rights). *See* discussion *infra* at Part IV.B.

Second, Whiteside's fraud damages theory and misrepresentation theory was that he is entitled to recoup the total amount expended under the subject contracts ($425,000), but wholly failed to offer any evidence, much less reasonably certain evidence, of the value received. *See Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018) (a fraud plaintiff's economic damages are limited to the difference between the value of what the defrauded party parted with and the value it actually received). *See* discussion *infra* at Part IV.D.

And, Plaintiffs are not proper parties to sue Defendants under the facts of this case. *See* discussion *infra* at Part IV.F.

Additionally, the jury's award of exemplary damages is not supported by clear and convincing evidence, i.e., the evidence is neither clear nor convincing as to the elements of intent and reliance; the Court erred in not submitting a jury question on agency, a hotly disputed issue that Plaintiffs had the burden to prove; the Court erred in not continuing the trial, in excluding recorded evidence of a telephone meeting where Plaintiffs could have identified the parties on the call, and the in person testimony of Joe Perez and GB Conley, whose deposition was taken while he was still under the effects of a significant head injury and concussions, especially for an 80 - year old man, and closing arguments from Plaintiffs' counsel reasonably prejudiced the jury. *See* discussion *infra* at Part IV. F.

These manifests errors militate in favor of altering or amending the final judgment, or, in the alternative, granting a new trial.

On this record, Defendants urge the Court to amend its judgment in this case because the great weight of the evidence, including the undisputed evidence presented to the jury, does not support the jury's verdict.

## LAW APPLICABLE TO THE MOTION

### A.    It is Within the Court's Discretion to Order a New Trial

The decision to correct an error by granting a new trial under Federal Rule of Civil Procedure 59 rests within the Court's discretion. *Allied Chem. Corp. v. Daiflon, Inc*., 449 U.S. 33, 36, 101 S. Ct. 188, 66 L. Ed. 2d 193 (1980); *Pryor v. Trane Co*., 138 F.3d 1024, 1026 (5th Cir. 1989). Although Rule 59 is silent as to the grounds for new trial, it is well-established that a district court has the power to grant a new trial based on its appraisal of the fairness of the initial trial and the reliability of the jury's verdict. *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996); *Smith v. Transworld Drilling Co*., 773 F.2d 610, 612-13 (5th Cir. 1985). Motions for new trial have been granted, among other reasons, where, as here, the verdict is against the great weight of the evidence, *Cates v. Creamer*, 431 F.3d 456, 460 (5th Cir. 2005); the damages awarded are excessive, *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 437 n. 22, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996); the court erroneously charged the jury, *Goodgame v. Am. Cast Iron Pipe Co*., 75 F.3d 1516, 1521 (11th Cir. 1996); when it is "reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done," *Laxton v. Gap, Inc*., 333 F.3d 572, 586 (5th Cir. 2003) (quoting *Del Rio Distrib., Inc. v. Adolph Coors Co*., 589 F.2d 176, 179 n. 3 (5th Cir. 1979)), or when opposing counsel made improper or inflammatory arguments in front of the jury. *Johnson v. Ford Motor Co*., 988 F.2d 573, 582 (5th Cir. 1993).

Unlike a motion for judgment as a matter of law, "[t]he district court may order a new trial even where the verdict is supported by substantial evidence." *Lama v. Borras*, 16 F.3d 473, 477 (1st Cir. 1994) (emphasis in original omitted); *see also* 8 Wright & Miller, Federal Practice and Procedure § 2806, at 63-65 (2d ed. 1995). "In granting a new trial, the district court weighs all of the evidence, and it need not view it in the light most favorable to the nonmoving party." *Shelly v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (citing *Smith*, 773 F.2d 610, 613 (5th Cir. 1085)); *see also Bush v. Texaco, Inc.*, 504 F.Supp. 670, 671 (E.D. Tex. 1981) (quoting *Bazile v. Bisso Marine Co.*, 606 F.2d 101, 105 (5th Cir. 1980), *cert. denied*, 449 U.S. 101 (1980)). A district court has "the right, and indeed the duty, to weigh the evidence as [it] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence," where, in the court's conscientious opinion, "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice." *Hampton v. Magnolia Towing Co.*, 338 F.2d 303, 306 (5th Cir. 1964).[1] And where, as here, a trial is "complicated and deals with a subject matter not lying within the ordinary knowledge of jurors a verdict should be scrutinized more closely by the trial judge." *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 91 (3d Cir. 1964).

## B.    Alternatively, the Court May Amend the Judgment to Prevent Clear Error and Manifest Injustice.

Under Federal Rule of Civil Procedure 59(e), a district court may alter or amend a judgment. *See* FED. R. CIV. P. 59(e). "A Rule 59(e) motion 'calls into question the correctness of a judgment,'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)), and allows the district court to alter a

---

[1] Defendants do not concede that the verdict on fraud or on breach of contract is supported by substantial, or even circumstantial, evidence.

previously entered judgment to correct manifest errors of law or fact. *Id*. at 479 (citing *Waltman v. Int'l Paper Co*., 875 F.2d 468, 473 (5th Cir. 1989)). District courts have discretion in deciding whether to grant such motions, see id., and a district court should "strike the proper balance between the need for finality and the need to render a just decision on the basis of all the facts." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc*., 6 F.3d 350, 355 (5th Cir. 1993).

<u>**Argument & Authorities**</u>

**A.     The Jury's Fraud and Negligent Misrepresentation Findings are Against the Great Weight of the Evidence.**

Initially, Whiteside's own admissions at trial vitiate a finding of fraud. Specifically:

- Whiteside admitted that he committed fraud against the Defendants;

- Whiteside conceded that he misrepresented himself to Defendants as Kapexia's "Managing Member" when he was not even a member of Kapexia, much less a "Managing Member;"

  - Whiteside testified he did not sign the subject contracts in his individual capacity or as a disclosed agent of Kapexia;

  - The contracts do not identify Whiteside as signing, or having an interest in, the contracts either as an individual or as Kapexia's agent;

  - Whiteside admitted that the terms of the agreements between Kapexia and Cimble include no terms or contract language indicating that either contract would be enforceable against Whiteside if the opposite party (i.e., Cimble) sued him for breach of contract;

  - Whiteside also admitted that Autoficio was not formed until after the agreements in question were signed;

  - Whiteside conceded in his testimony that Kapexia did not satisfy its side of the contractual agreements at issue here between Kapexia and Cimble;

  - Whiteside admitted that Kapexia still today owns all of the subject shares in Cimble, representing Kapexia's 7.14% ownership of Cimble;

  - Whiteside testified multiple times (including in response to written juror questions allowed by the Court) that he chose to proceed with the transaction even after he

> did not receive all of the financial and other information he initially requested, and
> even though he considers himself to be an experienced investor, because he trusted
> the Defendants and thought they were going to become business partners and
> believes one should be able to trust one's business partners.

These admissions render the jury's answers improper. Also, the jury's proportionate responsibility findings are against the great weight of the evidence because they it fails to attribute any responsibility to Whiteside. Further, there alleged fraud would have been Kapexia's claim, not Whiteside's. There is no evidence to support the jury's finding that Barret made any misrepresentations that were relied upon by Whiteside and that caused damages. This Court should vacate the award against Barrett.

**B.     The Great Weight of the Evidence Does not Support a Finding of Justifiable Reliance.**

Assuming *arguendo*, Defendants did make a material misrepresentation fraud still fails because the great weight of the evidence does not support a finding that Whiteside's reliance was justifiable.

Justifiable reliance is an element of Whiteside's claims for common law fraud, statutory fraud, and negligent misrepresentation. *See, e.g., Sawyer v. E.I. Du Pont De Nemours & Co*., 430 S.W.3d 396, 401 (Tex. 2014) (common law fraud); *Procter v. RMC Capital Corp*., 47 S.W.3d 828, 831 (Tex. App.—Beaumont 2001, no pet.) (recognizing element of reliance same for both common-law and statutory fraud); *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (to prove action for negligent misrepresentation, plaintiff must establish that it actually and justifiably relied on defendant's representation).

In evaluating justifiable reliance, the fact-finder considers evidence of the plaintiff's characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud. *Grant Thornton LLP*, 314 S.W.3d at 923.

The fact-finder also must consider evidence about the nature of the parties' relationship, *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*,  546 S.W.3d 648, 654 (Tex. 2018). If the parties are involved in an arms-length transaction, the plaintiff must exercise ordinary care to protect its own interest and is presumed to know any facts that would have been discovered by a reasonably prudent person in similar circumstances, *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 497-98 (Tex. 2019); *JPMorgan Chase Bank*, 546 S.W.3d at 654; *Chico Auto Parts & Serv. v. Crockett*, 512 S.W.3d 560, 577 (Tex. App.—El Paso 2017, pet. denied). In an arm's length transaction,[2] like this one, Whiteside was not not justified in relying merely on Allen's and/or Barrett's honesty and integrity, *JPMorgan Chase Bank*, 546 S.W.3d at 654, and Whiteside cannot excuse himself from the consequences of failing to protect himself because he unwisely trusted the other party. *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962).

Here, the evidence showed, and by his own admission, that Whiteside is an experienced and sophisticated investor. [*See, e.g.*, Dkt. 274 at 111 ("[Whiteside is] an experienced investor")]. Thus, it cannot be reasonably disputed the evidence proved Whiteside's "characteristic and abilities" in 2014 were that of a successful investor who had a proven history of transacting complex business relationships.

Further, Whiteside testified multiple times, including in response to a written question from the jury, that he chose to proceed with the transaction even after he did not receive all of the financial and other information he initially requested, and even though he considers himself to be an experienced investor, because he trusted the Defendants and thought they were going to become

---

[2] "Generally, an arm's length-transaction is one between two unrelated parties with generally equal bargaining power, each acting in its own interest." *Hous. Unlimited, Inc. v. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 832 (Tex. 2014).

business partners and believes one should be able to trust one's business partners. This is not sufficient, as a matter of law, to meet the required element of justifiable reliance.

Given Mr. Whiteside's testimony about his experience as an investor and his reasons for choosing to proceed with making payments on behalf of Kapexia in connection with the contracts between Kapexia and Cimble even though he did not receive all of the financial information he initially requested simply because he trusted the Defendants is insufficient as a matter of law to prove the essential element of justifiable reliance necessary to all of his fraud-based causes of action. *JPMorgan Chase Bank*, 546 S.W.3d at 653; *Barrow-Shaver Res. Co.,* 590 S.W.3d at 496; *Angell v. Culpepper,* No. 03-19-00778-CV, 2021 Tex. App. LEXIS 8767, at *33, 2021 WL 5018758 (Tex. App.—Austin Oct. 29, 2021, no pet.); *Nelson v. McCall Motors, Inc.*, 630 S.W.3d 141, 148-49 (Tex. App.—Eastland 2020, no pet.).   Further, a person may not justifiably rely on a representation if there are "red flags" indicating such reliance is unwarranted. *Lewis v. Bank of Am. NA*, 343 F.3d 540, 546 (5th Cir. 2003) (applying Texas law); *Mercedes-Benz USA, LLC v. Carduco, Inc*., 583 S.W.3d 553, 558 (Tex. 2019); *Affordable Power, L.P. v. Buckeye Ventures, Inc*., 347 S.W.3d 825, 830 (Tex. App.—Dallas 2011, no pet.). A fraud plaintiff "cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he utilized his opportunity to make a cursory examination of investigation. *Lewis*, 343 F.3d at 546. Here, the evidence of "red flags," vitiating  any argument that Whiteside's reliance was "justifiable," includes, among other evidence:

- Cimble did not provide Whiteside with requested financial documents supporting the EBITDA;

- Whiteside made his own personal decision to sign as "Managing Member" and "Manager" of Kapexia Manager, when he knew that he did not have a signed operating agreement with Kapexia;

- Whiteside sent $300,000 to Cimble on behalf of Kapexia's performance under the SPA without having done due diligence, knowing that he was not a member of Kapexia, and without any any obligation to use his own money [*See* DX-34 ("the stock belongs to Kapexia")];

- Cimble told Kapexia that it had not filed taxes for Cimble ("What we would do would likely drive the IRS crazy. Who talks like that? Who runs a business like that, and just tells people that?");

- Cimble never provided bank statements to back up the limited financial data provided to Kapexia which covered the inflows and expenditures of Cimble's operating finances;

- Whiteside knew that the the LunarEye Patents did not belong to Cimble; Cimble only had the value of the limited license royalty forgiveness (which an IPR would not impact), and that the patents were not required for the development of the product contemplated by the LOC;

- Whiteside knew that the contracts, drafted by Kapexia, not Cimble, included "wiggle room," gave the parties room to argue that the agreements were unenforceable, and acknowledged that the agreements should have been "more structured."

## C.     Whiteside is Equitably Estopped from Recovering on his Fraud Claims.

The Court instructed the jury that Defendants' failure to comply with the subject contracts, if any, is excused if: (1) Plaintiffs' committed fraud on Defendants, (2) Defendants' performance was made impracticable by the occurrence or non-occurrence of any event which was a basic assumption of the parties; (3) Defendants performed their obligations under the subject contracts; (4) one or more of the subject contracts were found ambiguous; or (5) if a different performance was accepted as full satisfaction of performance of the original obligations of the subject contract. [*See* Dkt. 256 pp. 21-23].

## D.     Jury's Award of Fraud and other Damages Against the Great Weight of the Evidence

At trial, counsel for Whiteside improperly argued to the jury that Plaintiffs' fraud and misrepresentation damages were $425,000, representing only the value expended (i.e., $300,000

paid under the SPA plus $125,000 paid under the LOC). [4RR 236], and the jury entered their liability damages consistent with this argument. [*See* Dkt. 259 p. 1, Question No. 2 (common law fraud); p. 4, Question No. 10 (statutory fraud); p. 7, Question No. 19 (breach of the SPA); p. 7, Question No. 20 (breach of the LOC)]. It is undisputed, however, that what Kapexia received in exchange for the expenditure of $425,000 was the value of technology being developed as contemplated by the parties, and that Whiteside admitted at trial that Defendants did develop a working prototype for Kapexia which is exactly what the LOC funds were intended to finance and were ready to go forward.

Texas law is clear, and the Court properly instructed the jury, that economic damages for fraud are limited to the value expended *less the value received*. See *Anderson*, 550 S.W.3d at 614. The jury's finding, however, only represents one side of the fraud damages calculation, i.e., the value expended; Whiteside did not offer any evidence, expert or otherwise, of the value received. Accordingly, the evidence is insufficient as a matter of law to support the jury's award of fraud damages.

Equally important, the great weight of the evidence precludes Whiteside from recovering damages because Defendants performed their contractual obligation under the SPA by delivering 7.14% of Cimble's issues and outstanding shares (a stipulated fact in the Court's Final Instructions to the Jury, and Defendants performed their contractual obligation under the LOC by timely delivering the "developed product," which Whiteside admitted worked well and specifically, according to the language of the Memorandum of Understanding as well as the Second Memorandum of Understanding. The shares had value and was received by Plaintiffs and the jury's answer is against the great weight of the evidence.

E.     **The Exemplary Damages Award is Not Supported by a Preponderance of the Evidence or Clear and Convincing Evidence, and is Based on Manifest Legal and Factual Errors.**

When a plaintiff can recover exemplary damages for fraud, a favorable jury finding on the liability question does not automatically entitle the plaintiff to exemplary damages based on the same conduct. *See* TEX. CIV. PRAC. & REM. CODE § 41.003(a). An award of exemplary damages requires proof by clear and convincing evidence, a standard which presupposes a "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Franklin Bank, S.S.B. v. Barnes (In re Barnes)*, 369 B.R. 298, 310 (Bankr. W.D. Tex. 2007) (applying Texas law).

First, as discussed above, Whiteside suffered no fraud damages under the preponderance of the evidence standard. "Recovery of punitive damages requires a finding of an independent tort with accompanying actual damages." *Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex. 1993) (per curiam); *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 665 (Tex. 1995)("The mere availability of a tort-based theory of recovery is not sufficient; actual damages sustained from a tort must be proven before punitive damages are available."). Consequently, the exemplary damages awarded here cannot stand.

Second, Whiteside did not prove, by even a preponderance of the evidence standard, Defendants' intent to defraud. A denial that a promise was made and a failure to perform are factors showing no intent to perform, but, standing alone, are insufficient to prove intent to defraud. *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 322 (5th Cir. 1999) (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986). There must be some "slight circumstantial evidence" of fraud to support an intent finding. *Ensley*, 171 F.3d at 322 (citing *Spoljaric*, 708 S.W.2d at 435); *Hoechst Celanese Corp. v.*

*Arthur Bros., Inc.*, 882 S.W.2d 917, 925 (Tex. App.—Corpus Christi 1994, writ denied). For these reasons, "successful claims have involved confessions by the defendant or its agents of the requisite intent." *Cerullo v. Gotlieb*, 309 S.W.3d 160, 166 (Tex. App.—Dallas 2010, pet. denied) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 305 (Tex. 2006)). In this case, the evidence simply does not support any finding that Allen or Barrett ever intended to defraud Whiteside.

### F.   The Jury's Breach of Contract Findings are Against the Great Weight of the Evidence

The Court denied Defendants' motion for summary judgment finding, in relevant part, that Plaintiffs established a genuine issue of material fact as to whether Whiteside and/or Autoficio acted as Kapexia's agents. [*See* Dkt. 197].    Regardless, as pointed out before, Whiteside did not have contractual nor constitutional standing. Further, the great weight of the evidence does not support a finding that Plaintiffs met their burden of proof to that Whiteside and Audioficio was establish that they had standing, and/or are proper parties to pursue their claims against Defendants. The findings are against the great weight of the evidence that Defendant Cimble breached the contract and that Cimble did not fully perform.

### G.   The Court Erred in Excluding Relevant Evidence

The Court erred when it did not continue trial, in excluding recorded evidence of a telephone meeting where Plaintiffs could have identified the parties on the call, and the in-person testimony of Joe Perez and GB Conley (whose deposition was taken while he was still under the effects of a significant head injury and concussions, especially for an 80-year-old man). Perez was the Managing Member of Kapexia, the person that first reached out to Cimble to initiate discussions that led to the transaction, and intimately involved with negotiations, the person who purportedly authorized Whiteside to sign the subject contracts, and the only person to able to testify

with regard to a key telephone conversation between the parties. It is undisputed that Mr. Perez's testimony would have been relevant and, as such, the court erred in not allowing Mr. Perez to testify. *See* FED. R. EVID. 401. This recording directly contradicted Plaintiffs allegations of misrepresentation. The transcripts show that Defendants did not make misrepresentations and the Plaintiffs know they did not. This exclusion constituted an abuse of discretion that affected Defendants' substantial rights.

**H.     The Court's finding and ruling on Plaintiff's attorney's fees should be vacated and is against the great weight and preponderance of the evidence.**

The Court made a finding on Plaintiffs' attorneys' fees. [367]. Plaintiffs failed to properly segregate their attorneys' fees. Clearly a breach of contract action is different from a fraud claim. In a breach of contract, this issue is whether the defendant breached a contract and a plaintiff suffered damages. In a fraud case, the issue is whether the defendant made a material misrepresentation that a plaintiff relied upon that resulted in damages. The facts to prove a material misrepresentation are not so intertwined that segregation is not feasible. This Court should vacate the award of attorney's fees. The Court gave Plaintiff several opportunities to correct its errors and Plaintiffs failed to do. Plaintiffs overly redacted the statements which are insufficient, although the Court gave a discount due to overredactions. Defendants contend that the Court should alter or amend its judgment because there was insufficient evidence because Whiteside's Supplemental Briefing still failed to meet the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates; the rates charged were unreasonable; the prevailing market rate with expert evidence based on similar cases and relies solely on his attorney's affidavit; Defendants had no knowledge of the terms of Whiteside's "Flat Fee" arrangement; Whiteside's calculations do not account for credits, Whiteside's amount incurred or contracted for is not conclusive evidence of reasonableness or necessity of fees,        Whiteside's calculation should exclude hours expended for any

excessive or unnecessary services, and Whiteside failed to submit evidence to support a conclusory allegation.

## I.     The Jury's Paradoxical Verdict Merits a New Trial

The jury's verdict belies a confusion of the facts and law at issue in this case. To explain this perplexing result, we must consult the record.

There are several factors that may have prejudiced the jury against Allen and Barrett. If a closing argument to the jury contains numerous instances of improper argument, as occurred here, a court "must conclude that it is more than 'reasonably probable' that the verdict was influenced by the prejudicial statements." *Draper v. Airco, Inc*., 580 F.2d 91, 96 (3d Cir. 1978). Given the highly inferential nature of this case, the wealth of questionable remarks made by Plaintiffs' counsel in his closing, and that the jury's findings are against the great weight of the evidence, the Court should order a new trial. These improper remarks included, among other things, repeatedly referring to Allen and Barrett as liars:

- "And I have never seen a witness lie as much as Mr. Allen did to you and to this court, over and over and over again." [4RR 168]

- "And Mr. Barrett . . . He lies too." [4RR 169]

- "[T]hat testimony that they told can't be trusted because they lied over and over again." [4RR 170]

- "I didn't hear them take responsibility for anything that went wrong." [4RR 170];

- "They don't take any responsibility for their actions. No apologies, no acknowledgement that they could have done something better. In fact, it was worse than that. Mr. Barrett acknowledge that, oh, I wanted to create some wiggle room in—in the contract. That's not an honest businessman. That's not somebody who's trying to do the right thing." [4RR 171]

- "They lied about [Barrett] being COO to induce Mr. Whiteside to invest in their company." [4RR 184]

14

- "[Allen] rips off Mr. Conley, he rips off Mr. Whiteside, he rips off Dennis Jump, he rips off his own business partner, and he rips off his own lawyer." [4RR 185]

- "They broke their promises. They lied, they concealed, they did things to get that money from Mr. Whiteside." [4RR 193]

When an argument is so inflammatory that its harmfulness could not be eliminated by an instruction to the jury to disregard it, the prejudicial nature of the argument is so acute that it is "incurable." *UMLIC VP LLC v. T&M Sales & Envtl. Sys.*, 176 S.W.3d 595, 617 (Tex. App.—Corpus Christi 2005, pet. denied). Improper jury argument results in incurable harm where, as here, someone calls someone a liar or a fraud. *Id.* (citing *Dover Corp. v. Perez*, 587 S.W.2d 761, 767 (Tex. App.—Corpus Christi 1979, writ ref'd n.r.e.). Accordingly, it was plain error for Plaintiffs 'counsel to make such an argument.[3]

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendants Cimble Corporation, Alvin "Chuck" Whiteside, and Paul Barrett, request that this Court enter an order vacating the final judgment and enter final judgment that Plaintiffs Brian Whiteside and Autoficio, LLC take nothing, and that Defendants be awarded costs and all other relief to which they are justly entitled. In the alternative, should the Court not vacate the final judgment, Defendants request that the Court grant a new trial, and all other relief to which Defendants are justly entitled at law or in equity.

---

[3] Notwithstanding that Defendants did not object to this argument at trial, the Court may consider the "plain error" implications of these arguments under Federal Rule of Civil Procedure 103(d). FED. R. EVID. 103(d) ("A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved.").

Respectfully submitted,

/s/ Thomas M. Michel
THOMAS M. MICHEL
State Bar No. 14009480
thomasm@lawgjm.com
GRIFFITH, JAY & MICHEL, LLP
2200 Forest Park Blvd.
Fort Worth, Texas 76110
(817) 926-2500 (Telephone)
(817) 926-2505 (Facsimile)
**APPELLATE COUNSEL FOR
DEFENDANTS CIMBLE CORP., ALVIN
ALLEN, AND PAUL BARRETT**

## CERTIFICATE OF SERVICE

I certify that on September 11, 2024, a true and correct copy of the foregoing document

was served on all counsel of record through Court's electronic filing system.

/s/ *Thomas M. Michel*
Thomas M. Michel